97 Cal.App.3d 366 (1979)
158 Cal. Rptr. 640
Estate of MARIE CATTALINI, Deceased.
N.A. SAPUNAR REALTY, Plaintiff and Appellant,
v.
CUSHMAN & WAKEFIELD, Defendant and Respondent.
Docket No. 44641.
Court of Appeals of California, First District, Division Four.
September 28, 1979.
*368 COUNSEL
William E. Taggart, Jr., and Christie L. Fraser for Plaintiff and Appellant.
Nelson H. Wild for Defendant and Respondent.
OPINION
CHRISTIAN, J.
This appeal presents a novel issue concerning the power of the probate court to apportion commissions earned by real estate brokers upon the sale of an asset of the estate. The administratrix of the estate of Marie E. Cattalini sought confirmation of a sale of real *369 property owned by the decedent. The probate court confirmed the sale and divided the broker's commission equally between N.A. Sapunar Realty and Cushman & Wakefield, Buckbee Thorne & Company. Sapunar appeals, contending that no part of the commission should have been awarded to the Cushman firm.
The administratrix had entered into a written contract with respondent Cushman & Wakefield, Buckbee Thorne & Company, granting an exclusive right to sell real property owned by the decedent. Paragraph five of this printed form contained a statement that the administratrix had obtained the permission of the court to enter into the agreement. In fact, court permission had not been obtained.
Respondent published a description of the property, accompanied by respondent's name, in a local trade journal, the San Francisco Board of Realtors' Multiple Listing Service. To be published in the Multiple Listing Service, property must be subject to a contract granting a broker an exclusive right of sale. Less detailed information concerning the property was also circulated in two other trade publications, Edwards Abstract from Records and the Blue Sheet. Respondent advertised the property in a local newspaper, exhibited the property twice, and received six bids on the property.
An employee of appellant N.A. Sapunar Realty saw a reference to the property in one of the trade publications. Although the Sapunar office regularly received all three of the publications, the principal of the office, Mr. Sapunar, testified that he "[felt] very confident" that his employee had gotten the information from the Blue Sheet rather than from the Multiple Listing Service. Appellant tendered the highest bid on the property on behalf of its client, Eugene Needham. The bid was in the form of a "Uniform Agreement of Sale and Deposit Receipt," which provided, in language inserted by appellant, for payment of the broker's commission to "listing broker if any & selling broker N.A. Sapunar." San Francisco real estate brokers customarily split fees between a listing broker and a selling broker when the listing broker holds an exclusive right of sale.
No higher bid was submitted at the confirmation hearing, and the sale to appellant's client was confirmed. The probate court subsequently divided the broker's commission equally between appellant and respondent.
*370 Probate Code section 760[1] authorizes an executor or administrator to enter into a written contract with a broker to secure a purchaser for real or personal property of the estate. The contract may provide for payment of a commission out of the proceeds of the sale, and if the sale is confirmed this provision is binding "for an amount to be allowed by the court." Section 760 further authorizes a grant of an exclusive right to sell property if the executor or administrator obtains permission of the court to enter into such an agreement. In the present case, the administratrix failed to obtain the required court permission to enter into the exclusive contract with the respondent broker. Appellant contends that the probate court consequently lacked authority to allocate any portion of the broker's commission to respondent.
(1) Respondent contends that the parties stipulated that the court could divide the commission on a reasonable basis, inasmuch as appellant, by arguing the case on its merits and asserting its right to the entire broker's commission, in effect stipulated to the court's deciding the issue. The record, however, reflects neither a filed written stipulation nor an entry of an oral stipulation upon the minutes of the court.
Code of Civil Procedure section 283 provides that: "An attorney and counselor shall have authority: 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise; ...." Although section 283 has been broadly construed, and informal stipulations have been enforced on the bases of estoppel or ratification (see 1 Witkin, Cal. Procedure, Attorneys, § 129, p. 140), courts will apply the statutory rule where the making of a stipulation is disputed by one of the parties and there is no showing of estoppel or ratification. (May v. May (1969) 275 Cal. App.2d 264, 277-278 [79 Cal. Rptr. 622]; Fresno City High School Dist. *371 v. Dillon (1939) 34 Cal. App.2d 636, 644 [94 P.2d 86].) In the present case, appellant denies that it stipulated to a division of the broker's commission on a reasonable basis. The strict requirements of section 283 are therefore applicable and are not shown to have been satisfied, expressly or by estoppel or ratification.
Appellant contends that the probate court violated its own published policy when it allocated the commission equally between appellant and respondent. Section 10.11 of the San Francisco Probate Policy Manual states: "Probate Code Section 760 does not give the Court power to allocate the commission between the exclusive listing broker or multiple group of brokers and the actual selling broker but only to fix the entire amount. The brokers concerned may stipulate at the hearing that the Court hear evidence and divide the commission on a reasonable basis. If they do not, the sale will be confirmed and the amount of commission retained in escrow until the brokers settle their differences by arbitration or suit." (Italics added.) (2) Local court policies are generally enforceable as court rules, which have the effect of procedural statutes so long as they are not contrary to higher law. (Wisniewski v. Clary (1975) 46 Cal. App.3d 499, 504-505 [120 Cal. Rptr. 176].) A court may, however, suspend its own rules or except a particular case from their operation whenever the purposes of justice so require. (Adams v. Sharp (1964) 61 Cal.2d 775, 777 [40 Cal. Rptr. 255, 394 P.2d 943].) The probate court was thus not bound by section 10.11; it could deviate from its policy if required by the purposes of justice. Moreover, section 10.11 does not deprive the probate court of authority to allocate a commission payable under a nonexclusive contract of sale.
(3) Respondent contends that, although the administratrix failed to obtain court permission to grant an exclusive right of sale, the contract between the administratrix and respondent was otherwise valid as a nonexclusive or open listing contract under section 760, and that the commission could be allocated on this basis. The initial question, therefore, is whether the contract could be treated as valid but nonexclusive. Respondent contends that the contract in the present case is valid under paragraph one of section 760, which authorizes entry into a contract of sale, in spite of noncompliance with the additional exclusivity provisions of paragraph two, added by amendment in 1974 (Stats. 1974, ch. 1422, § 1, p. 3124).
Several decisions have upheld the validity of contracts where the parties had not strictly complied with the provisions of section 760. These cases arose under an earlier version of the statute, which directed that the *372 contract "shall provide" for payment of the broker's commission out of the proceeds of the sale; they held that contracts were not void simply because the parties failed to include such an express provision. (Estate of Mitchell (1942) 20 Cal.2d 48, 50 [123 P.2d 503]; Estate of Efird (1955) 130 Cal. App.2d 227, 230 [278 P.2d 730].) The Mitchell case held that the parties had not truly violated the pertinent provision of section 760 because it was to be considered as mandatory only to the extent that it imposed the limitation that commissions could be paid solely from the proceeds of the sale. (20 Cal.2d at p. 52.) In Estate of Efird, however, the broker's listing agreement had expressly violated this provision by providing that the assets of the trust estate were solely liable for payment of the commission. The court nevertheless upheld the validity of the agreement, citing Estate of Rule (1944) 25 Cal.2d 1, 16 [152 P.2d 1003, 155 A.L.R. 1319] [disapproved on other grounds, Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 866 fn. 2 (44 Cal. Rptr. 767, 402 P.2d 839)] for the proposition that the provisions of the Probate Code are to be liberally construed. (130 Cal. App.2d at p. 230.) The present case is analogous to Estate of Efird in that the contracts in both cases contained contractual provisions unauthorized by section 760. Efird simply ignored the unauthorized language in the broker's agreement and thus is precedent for similar treatment of the present case. The contractual provisions granting an exclusive right to sell, in violation of paragraph 2 of section 760, can be treated as ineffective and the contract can be treated as valid under paragraph 1 of the statute, without the additional feature of exclusivity.
If the contract between the administratrix and respondent is treated as nonexclusive, the court can order payment of a commission pursuant to the contract if it has statutory authority to do so. Probate Code section 760 provides that, with regard to a contract "to secure a purchaser," "[w]hen said sale is confirmed to such purchaser such contract shall be binding and valid as against the estate for an amount to be allowed by the court." Respondent can be said to have "secured" the purchaser in this case by listing the property in three trade publications, which resulted in the tendering of a bid by appellant on behalf of its client. Section 760 thus authorized enforcement of the commission provisions of the contract in "an amount to be allowed by the court," in this case half the commission.
The present dispute calls into question the authority of the court to award a commission to either of the brokers. A narrow construction of Probate Code section 760 would limit its application to cases in which the *373 purchaser was a client of the listing broker. Probate Code sections 761[2] and 785[3] provide for payment of commissions to both a listing broker and a selling broker where an increased bid was made by the selling broker's client at the time of the hearing on confirmation of a sale to the listing *374 broker's client. Probate Code section 761.5[4] allows payment of a broker's commission where a bid has been presented to the personal representative and the broker's client subsequently tenders an increased bid at the confirmation hearing. Although the right to recover a commission on a probate sale is regulated by statute (see Estate of Toy (1977) 72 Cal. App.3d 392, 396 [140 Cal. Rptr. 183]), no statute specifically mentions payment of commissions where, as in this case, the original bid was submitted by a broker other than the broker under contract with the executor or administrator. Strict construction of the Probate Code might thus lead to a conclusion that neither broker is entitled to recover a commission.
A similar problem was presented in Estate of Hughes (1935) 3 Cal. App.2d 551, 553 [40 P.2d 295], in which an executor had given open listings of a property to several real estate brokers. After a purchaser was procured, one broker claimed the entire commission while a second broker objected that he had rendered services in procuring the purchaser to whom the sale was confirmed. The probate court ordered the commission to be divided equally between the two brokers. On appeal, the broker claiming the entire commission argued that the probate court had power to fix and allow the amount of the commission and had power to divide a commission where an increased bid had been made, but had no authority to determine adverse claims between brokers. The appellate court rejected this argument, stating, "It is well established that the probate court has exclusive jurisdiction to adjust conflicting claims of two brokers." (Ibid.) Hughes does not provide explicit authority for the probate court's action in the present case because in Hughes both the brokers were under contract with the executor. But the holding does indicate that a court has general authority to determine adverse claims between brokers who seek compensation from an estate even where the Probate Code does not deal with the specifics of the dispute. This conclusion promotes judicial economy; it is also entirely fair to the contending brokers, at least where neither takes action to have the dispute adjudicated in separate litigation.
The code provides for payment of commissions to both listing brokers and selling brokers in cases in which an increased bid is made at the *375 confirmation hearing. These provisions contemplate compensation for services provided. (See Estate of Toy, supra, 72 Cal. App.3d 392, 394.) It is unlikely that the Legislature intended compensation for services by both brokers where an increased bid is made at the confirmation hearings but not where a listing broker provided services but failed to procure the highest original bidder. A more consistent conclusion is that the code impliedly authorizes compensation for services provided by a listing broker and a selling broker. Indeed, the only authority cited by appellant in support of an award of the entire commission to itself is the portion of Probate Code section 785 providing for payment of a commission to the selling broker where an increased bid is made at the confirmation hearing. Appellant cannot logically contend that the analogy is valid to the extent that it supports an award to itself but not to the extent that it supports an award of half the commission to respondent. It is concluded that the probate court had authority to order payment of part of the broker's commission to both parties as compensation for services rendered.
The court's factual finding that respondent "proceeded to advertise the property, arranged for its showing and provided other beneficial services" provides a basis for awarding half the commission to respondent. The order is also supported by the court's finding that "the Sapunar office submitted its offer with knowledge of the multiple listing agreement" because commissions earned from sales of property listed in the Multiple Listing Service are customarily split between the listing broker and the selling broker. Appellant would have had no reasonable expectation of receiving more than half of the commission.
(4) Appellant contends that the probate court's finding that appellant submitted its offer with knowledge of the multiple listing agreement is not supported by the evidence. Appellant argues that the record contains uncontroverted evidence that Sapunar Realty learned of the listing through sources other than the Multiple Listing Service and was not apprised of the possibility of the existence of a multiple listing agreement until it submitted its bid on the property. This evidence was testimony by Nicholas Sapunar that he "[felt] very confident" that his employee had learned of the listing from the Blue Sheet publication. But there was circumstantial evidence to the contrary. The employee handling the transaction did not testify at the hearing. Appellant admittedly received the Multiple Listing Service publications. The printed form used by appellant to submit its bid contained an entry that the commission was payable to both the "listing broker if any and selling broker N.A. *376 Sapunar." The probate court could reasonably infer from this evidence that Sapunar rendered service with knowledge that a division of the commission was expected.
The order is affirmed.
Caldecott, P.J., and Poche, J., concurred.
NOTES
[1] Probate Code section 760: "The executor or administrator may enter into a written contract with any bona fide agent or broker, or multiple group of agents or brokers, to secure a purchaser for any real or personal property of the estate, which contract may provide for the payment of a commission out of the proceeds of the sale.

"Such contract may additionally grant an exclusive right to sell property for a period not in excess of 90 days if prior to the execution of the contract granting an exclusive right to sell, the executor or administrator obtains the permission of the court to enter into such an agreement upon a showing of necessity and advantage to the estate, and such permission may be granted when the executor or administrator is appointed or qualified, or at any subsequent time upon an ex parte application.
"When said sale is confirmed to such purchaser, such contract shall be binding and valid as against the estate for an amount to be allowed by the court. By the execution of any such contract no personal liability shall attach to the executor or administrator, and no liability of any kind shall be incurred by the estate unless an actual sale is made and confirmed by the court."
[2] Probate Code section 761: "In case of sale on an increased bid made at the time of confirmation to a purchaser not procured by the agent holding the contract, the court shall allow a commission on the full amount for which the sale is confirmed, one-half of said commission on the original bid to be paid to the agent whose bid was returned to the court for confirmation and the balance of the commission on the purchase price to the agent, if any, who procured the purchaser to whom the sale is confirmed. If the successful bidder is not produced by a bona fide agent, then the agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him." (Stats. 1931, ch. 281, § 761, p. 636, as amended Stats. 1955, ch. 1513, § 1, p. 2753, eff. July 1, 1955.)
[3] Probate Code section 785: "Upon the hearing the court must examine into the necessity for the sale, or the advantage, benefit and interest of the estate in having the sale made, and the efforts of the executor or administrator to expose the property to the market, and must examine the return and witnesses in relation to the sale; and if it appears to the court that good reason existed for the sale, that the sale was legally made and fairly conducted, and complied with the requirements of the previous section, that the sum bid is not disproportionate to the value, and it does not appear that a sum exceeding such bid at least 10 percent on the first ten thousand dollars ($10,000) bid and 5 percent on the amount of the bid in excess of ten thousand dollars ($10,000), exclusive of the expenses of a new sale, may be obtained, the court shall make an order confirming the sale and directing conveyances to be executed; otherwise it shall vacate the sale and direct another to be had, of which notice must be given and the sale in all respects conducted as if no previous sale had taken place. But if a written offer in an amount at least 10 percent more on the first ten thousand dollars ($10,000) bid and 5 percent more on the amount of the bid in excess of ten thousand dollars ($10,000) is made to the court by a responsible person, and the offer complies with all provisions of the law, the court shall accept such higher offer, confirm the sale to such person and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder, or, in its discretion, order a new sale. If more than one written offer in an amount at least 10 percent more on the first ten thousand dollars ($10,000) bid and 5 percent more on the amount of the bid in excess of ten thousand dollars ($10,000) is made to the court by responsible persons, and if any such increased bid complies with all the provisions of the law, the court shall accept such highest increased bid, confirm the sale to the person making such increased bid, and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder or, in its discretion, order a new sale. The compensation of the agent producing the successful bidder shall not exceed one-half of the difference between the amount of the bid in the original return and the amount of the successful bid, but such limitation shall not apply to any compensation of the agent holding the contract with the executor or administrator.

"For the purposes of this section the amount of a bid shall be determined by the court without regard to any commission on the amount of such bid to which an agent may be entitled by virtue of a contract with the executor or administrator. It shall be determined without regard to any condition of the bid that a certain amount thereof be paid to an agent by the executor or administrator, but notwithstanding that a bid contains such a condition, only such compensation to an agent as is proper under the preceding provisions of this section shall be allowed, and acceptance of the bid by the court binds the bidder though the compensation so allowed is less than the compensation to which the agent would be entitled had the condition been observed.
"Higher offers and bids are subject to the provisions of Section 785.1."
[4] Probate Code section 761.5: "Where an original bid is made by a purchaser direct to the estate and thereafter at the time of hearing the return of sale containing the original bid, an increased bid is made by a bona fide agent which results in the confirmation and sale of the property at such increased bid, the court shall allow a commission to the agent who procured the increased bid, which commission shall be fixed by the court at such amount as the court, in its discretion, finds will be a reasonable compensation for the services of the agent of the estate." (Added Stats. 1945, ch. 77, § 1, p. 386.)