[Civ. No. 56573. Second Dist., Div. Five. Feb. 5, 1980.]

Estate of WILLMA SCODIE ROSS, Deceased.
MARILYN UHLER, Petitioner and Respondent, v.
CRAIG RUTH, Objector and Appellant.

Estates of ANNIE E. HUFFMAN et al., Minors.
MARILYN UHLER, Petitioner and Respondent, v.
CRAIG RUTH, Objector and Appellant.

COUNSEL

David S. Kirbach for Objector and Appellant.

Chessmore & Hall and George V. Hall for Petitioner and Respondent.

OPINION

ASHBY, J.—Appellant Craig Ruth and Associates, a real estate broker (realty), appeals from an order awarding broker's commission in the amount of $13,500 entirely to respondent Marilyn Uhler, as a result of

the sale of a residence located at 6276 Via Canada in Rancho Palos Verdes, California.[1] Prior to the sale, the property was owned by the Willma S. Ross estate and the Huffman minors, as tenants in common.

Just prior to September 1977 Willma S. Ross died, after which the executrix of the Ross estate, Marion Ross, and guardian of the Huffman minors, Elise R. Huffman, decided to sell the Palos Verdes residence. On January 10, 1978, under a written agreement they granted appellant realty an exclusive right for six months to sell the subject property. This listing agreement was canceled on March 21, 1978, and appellant immediately entered into a second listing agreement with Ross and Huffman in which appellant was granted an exclusive right to sell the subject property, as before. On April 24, 1978, this second listing agreement was canceled.

Neither prior to the signing of the two listing agreements, nor anytime thereafter, did appellant realty inform Marion Ross and Elise R. Huffman that a court order granting permission to enter into an exclusive right-to-sell listing agreement was required pursuant to Probate Code section 760. Furthermore, the second agreement was signed by Elise R. Huffman, but not by Marion Ross. Neither agreement made reference to the probate nature of the property or indicated that court approval for the sale and determination of broker's commission was required. In addition, the second agreement provided for an exclusive listing period of 101 days, which exceeded the 90-day maximum listing period allowed by law. Appellant realty had never informed Ross and Huffman of this limitation.

On April 24, 1978, Marion Ruth, listing agent under the two listing agreements and member of appellant realty, showed Dr. and Mrs. Dale the Palos Verdes residence for the first time, in response to an advertisement Mrs. Dale had seen in the Los Angeles Times on April 23, 1978. Marion Ruth later testified to these facts in the trial court,[2] and also testified that she informed the Dales shortly thereafter that her

---

[1] A second parcel adjacent to the Palos Verdes residence was also included under the terms of the bid for the purchase of the residence.

[2] Upon ruling in favor of respondent in this case, the court rejected the statements of Marion Ruth in her written declaration, which contradicted the above-mentioned in-court testimony. In the declaration Ruth had claimed that she first contacted the Dales on or about April 10, 1978, showed them the house on approximately April 14, talked with the Dales by phone 4 or 5 times during the following 10 to 14 days and showed the house to the Dales again on April 24, 1978.

listing had run out and that the attorney for the estates was Howard Miller. Neither appellant nor Marion Ruth took any further part in generating or effecting a sale of this property to the Dales, and, instead, on April 25, 1978, the Dales contacted Marilyn Uhler, respondent broker, and proceeded through her to inspect this and other similar properties that were available for sale.

At the Dales' request, respondent began an extensive investigation of the subject property on April 26, 1978, which led to the preparation, negotiation and submission of the three bids from the Dales for the purchase of this residence. Respondent (1) investigated the listing status of the property on April 26, confirming with Marion Ruth that the latter no longer had a listing on the property; (2) unraveled the status of the title to the property and the status of the Ross and Huffman estate proceedings; (3) rectified prior failure to obtain the building permits; (4) met with Ross and Huffman to discuss the sale of furniture and other details; (5) attended to financial and escrow details; and (6) engaged in continuous phone conversations with the Dales and their attorney regarding the sale. After the Dales' second bid was conditionally accepted, respondent then prepared, negotiated and submitted the Dales' final and successful bid.

On September 8, 1978, the court granted respondent's motion for the total broker's commission payable from the proceeds of the sale from Huffman and Ross estates. Counsel for appellant did not raise an objection or make an offer of proof of any further evidence before the court granted respondent's motion. Moreover, the record is devoid of any evidence of notice to respondent or the Dales by appellant or anyone on its behalf, indicating that appellant was reserving a right to claim commission for the sale.

The court found that (1) appellant's exclusive listing agreements on the subject property were null and void; (2) respondent was the procuring cause of the successful bid from the Dales; (3) the interest of the Dales in purchasing the property was slight and noncommittal in their contact with appellant realty; (4) the Dales never told appellant that they were ready and willing to make an offer through appellant at any time; and (5) neither appellant nor anyone on its behalf had negotiations with the Dales for the purchase of the subject property or obtained any bid or actual offer to purchase the property by the Dales.[3]

---

[3]The court also found that no sale of the property occurred within the 30 days after the date of cancellation of the first listing or within 10 days of the termination of the

After a hearing on November 7, 1978, the court rejected appellant's counterfindings of facts and conclusions of law. Appellant then filed notice of appeal.

## DISCUSSION

At the outset, appellant concedes noncompliance with Probate Code section 760 regarding its listing agreements with Marion Ross and Elise R. Huffman, but contends that the invalid portions of the agreements should be severed and the rest of the provisions enforced to enable appellant recovery of a broker's commission. We disagree and hold the contention to be meritless.

■ Appellant's listing agreements violate Probate Code section 760, which requires court approval as a prerequisite to entering into an exclusive right-to-sell listing agreement. No such approval was obtained in the present case. Furthermore, appellant's second listing agreement provides for a 101-day listing period, which is in excess of the 90-day maximum period allowed under this code section. These violations support the court's finding that the listing agreements are null and void.[4]

■ Even if the court severed the invalid provisions from appellant's agreements, as was requested and has been permitted by law (*Estate of Cattalini* (1979) 97 Cal.App.3d 366 [158 Cal.Rptr. 640]), appellant would still be precluded from recovery of the broker's commission. ■ Upon a severance of the exclusive listing provision, the agreements would be characterized as open listings, and a sale involving an open listing agreement or a sale of real property under any type of listing which occurs after the expiration of the listing term,[5] requires that the broker prove that the sale was the direct and proximate result of her efforts in order to obtain a commission. (*Sessions* v. *Pacific Improvement*

---

second listing, as was permitted under the terms of the two listing agreements. If a sale had occurred within that time period, the first broker could have been entitled to some portion of the sales commission. (See Cal. Real Estate Sales Transactions (Cont. Ed. Bar 1967) § 5.88, p. 175.)

[4]The agreements are also no longer in effect. Appellant executed a cancellation of the listing agreements, through its agent Marion Ruth, on March 21, 1978, and April 24, 1978.

[5]In the instant case, the sale also occurred after the expiration of the listing terms, and after the 30-day and 10-day safety periods provided in appellant's listing agreements. (See fn. 3, *ante.*) (Actual sale of residence occurred after June 14, 1978.)

*Co.* (1922) 57 Cal.App. 1, 17 [206 P. 653]; *Bail* v. *Glantz* (1926) 78 Cal.App. 49, 53 [248 P. 258]; Cal. Real Estate Sales Transactions, *supra* (Cont. Ed. Bar 1967) § 5.76, pp. 167-168.) ▆ Appellant has failed to prove proximate causation.

The trial court found that appellant's efforts were not the proximate cause of the sale of the residence, and that (1) the Dales' interest in the property was slight and noncommittal during their contact with appellant; (2) appellant never engaged in negotiations with the Dales regarding the purchase of the property; and (3) appellant never obtained any bid or actual offer to purchase the property from the Dales.

According to the evidence presented in respondent's declaration and appellant's testimony in court, the Dales' first contact with appellant was on April 24, 1978, the date appellant's second listing agreement with the Huffman and Ross estates was canceled. On that day appellant, through its listing agent, Marion Ruth, showed the Dales the Palos Verdes residence. However, on the following day, the Dales notified respondent of the property and requested that respondent show them other similar residences and aid them in their investigations. It was respondent who then unraveled the property's title status and the status of the Huffman and Ross estate proceedings, remedied prior building defects, handled financing and escrow details for the Dales and maintained negotiations with the Dales and Huffman and Ross estates in order to prepare and submit three bids by the Dales for the purchase of the property.

The evidence supports the court's finding that respondent's work and efforts were the proximate cause of the sale of the property and that appellant's efforts were not. The court was entitled to conclude that appellant has not met its burden of proof on this issue and, therefore, appellant is not entitled to recovery of any broker's commission.

Furthermore, the recent decision of *Estate of Cattalini, supra,* 97 Cal.App.3d 366, is distinguishable from the facts of the present case and does nothing to change existing law. There the court severed the invalid exclusive right-to-sell listing provision in the brokers' agreement and then split the commission from the sale of property between two brokers.[6] However, the court found that the second broker in that case had rendered his services and sold the property with knowledge that a division of the commission was expected, and the bid form used in the

---

[6]In *Estate of Cattalini, supra,* the first broker had obtained six bids on the property from different persons, after advertising the property in three trade journals.

purchase expressly stated that commission would be split with the first listing broker. Thus, the real question was whether the court had the authority to award the commission to either or both of the brokers.

In the instant case, the facts do not warrant such an apportionment, regardless of the court's authority, to so award the commission. Here, the listing agreements with the first broker had already terminated before the sale of the property occurred. The 10- and 30-day "safety periods" following such termination had also ended before the date of sale. Furthermore, there was no evidence of any agreement explicit or otherwise, to split the broker's commission, and the bid forms that were submitted did not include an express provision providing for an apportionment. Given these circumstances, the court did not abuse its discretion in holding respondent's efforts to be the predominate and proximate cause of the sale and in thereby awarding the commission entirely to the second broker.

■ Appellant's final contention that it is entitled to recovery in quantum meruit must also fail. The slight and noncommittal involvement of the Dales with appellant realty, including the court's finding of an absence of any negotiations between the Dales and appellant for the purchase of the property, does not support a judgment of quantum meruit recovery.

The evidence supports the trial court's findings. (*Berzon* v. *U.L.C. Corp.* (1969) 274 Cal.App.2d 690, 696 [79 Cal.Rptr. 277].) Accordingly, the court's order awarding respondent the entire broker's commission for the sale of the Palos Verdes residence is affirmed.

Kaus, P. J., and Hastings, J., concurred.