[No. A018716. First Dist., Div. Two. Apr. 28, 1986.]

BEATRICE SIMONINI, as Conservator, etc., Plaintiff, v.
THOMAS R. PASSALACQUA, as Executor, etc., Defendant;
ROMAN CATHOLIC BISHOP OF SANTA ROSA,
Intervener and Appellant;
KEYLAND PROPERTIES, INC., Real Party in Interest and Respondent.

**COUNSEL**

John A. Klein and Margaret K. Butler for Intervener and Appellant.

Mikel D. Bryan for Real Party in Interest and Respondent.

## OPINION

**ROUSE, J.**—Intervener Roman Catholic Bishop of Santa Rosa appeals from the trial court's order awarding a commission on the estate sale of certain real property to real party in interest, Keyland Properties, Inc. (Keyland). Intervener contends that the Probate Code[1] does not authorize such a commission. We agree and reverse.

The present controversy evolves out of a partition action involving the estates of two individuals who held a joint tenancy interest in a parcel of real property. Intervener was allowed to intervene in the action because, as sole distributee of defendant estate, he had an expectant two-thirds interest in the property.

On February 2, 1982, the trial court entered a stipulated interlocutory judgment ordering a sale of the real property. The court appointed a referee to appraise and sell the property either in a public sale or by private sale conducted as "private sales of real property of estates of deceased persons as required by law."

The referee did not list the property with a real estate broker or agent. On February 5, 1982, he reported to the trial court that he had accepted an offer to purchase the property from John Andersen, who was represented by the real estate brokers Keyland, real party in interest on appeal.

A hearing on the motion to confirm the sale to Andersen was held on April 1, 1982. At the hearing intervener submitted an increased bid consisting of a written offer to purchase for $271,400 over three years or $222,000 in cash. The trial court confirmed the sale on terms to intervener. Intervener was not represented by a broker, but appeared through his attorney. Although sale to intervener was confirmed at the hearing, an award of a commission on the sale was taken under submission.

On June 1, 1982, the referee wrote the court recommending payment of a commission to Keyland. Intervener petitioned the court to protest the referee's ex parte request, and requested an evidentiary hearing on the matter. No evidentiary hearing was held, and on June 2, 1982, the trial court issued an order granting payment of a real estate commission of $10,000 to Keyland.

### I.

Intervener contends that the trial court's order awarding a commission to Keyland was erroneous because the Probate Code does not authorize

---

[1]Unless otherwise noted all subsequent statutory references are to the Probate Code.

such a commission. According to Code of Civil Procedure section 873.745, an agent's commission "shall be fixed . . . in the manner provided for private sales of real property in decedents' estates." The right to receive a commission on a probate sale is regulated by statute. (*Estate of Cattalini* (1979) 97 Cal.App.3d 366, 374 [158 Cal.Rptr. 640]; *Estate of Toy* (1977) 72 Cal.App.3d 392, 396 [140 Cal.Rptr. 183].) Sections 760, 761 and 785 govern the award of real estate commissions on the sale of real property in decedents' estates.

On appeal, the main controversy surrounds the interpretation of sections 760 and 761. Section 760 establishes the procedure by which an estate can enter into listing and sales agreement with brokers. At the time of the trial court's order, section 760 provided that "[t]he executor or administrator may enter into a written contract with any bona fide agent or broker, or multiple group of agents or brokers, to secure a purchaser for any real . . . property of the estate, which contract may provide for the payment of a commission out of the proceeds of the sale."

Section 761 describes the process of calculating the broker's commission when the sale is made on an increased bid submitted at the confirmation hearing. "In case of sale on an increased bid made at the time of confirmation to a purchaser not procured by the agent holding the contract, the court shall allow a commission on the full amount . . ., one-half of said commission on the original bid to be paid to the agent whose bid was returned to the court for confirmation and the balance of the commission on the purchase price to the agent, if any, who procured the purchaser to whom the sale is confirmed. If the successful bidder is not produced by a bona fide agent, then the agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him."

Intervener argues that to comprehend the statutory scheme for payment of commissions under section 761, the language "agent holding the contract" must be understood as the agent holding a listing contract as specified in section 760. Section 761 establishes that an "agent holding the contract" is entitled to a partial commission although the purchaser he had secured was outbid at the confirmation hearing, and in certain cases is entitled to a full commission when the successful bidder is not represented by an agent. Intervener contends that the purpose behind section 761 is to provide compensation for listing brokers who do not secure the successful bidder, but do help produce the final sale by displaying the property for the estate. "The code provides for payment of commissions to both listing brokers and selling brokers in cases in which an increased bid is made at the confirmation hearing. These provisions contemplate compensation for services provided." (*Estate of Cattalini, supra,* 97 Cal.App.3d 366, 374-375.)

Intervener points out that the term "contract" in sections 761 and 785 refers to the listing contract described in section 760. He contends that the connection between the term "contract" and the listing contract described in section 760 is made explicit in the last paragraph of section 785. In this paragraph the right to a commission "to which an agent may be entitled by virtue of a contract with the executor or administrator" is distinguished from a "condition of the bid that a certain amount thereof be paid to an agent by the executor or administrator . . . ." Thus, intervener claims that only a listing broker is an "agent holding the contract" within the meaning of section 761 and only that listing agent can be awarded a commission for services rendered an estate where he does not secure the successful bidder.

Keyland argues that the term "agent holding the contract," as set forth in section 761, applies to both the listing broker and the broker acting on behalf of a prospective purchaser who submits an offer which is accepted by an estate and returned to the court as the original bid for the confirmation hearing. The rationale for this reading of the statutory scheme is that "[b]oth types of brokers are rendering services to the estate under contract and are entitled to a commission under . . . Sections 760 and 761."

Keyland maintains that, as the agent of the original bidder, Andersen, it entered into a contract with the court-appointed referee for the purchase of the estate property. This contract was a purchase agreement and deposit receipt setting out the terms of Andersen's offer to buy the property and including provision of a six percent commission payable to Keyland. According to Keyland, this contract rendered a service to the estate. "By securing the original bid for the subsequent confirmation hearing, an agent serves the interests of the estate by helping to realize the highest possible price for the property being sold." Thus, the argument runs that, in granting a commission under section 761, the court was following the underlying statutory policy to pay compensation for services rendered to the estate.

## II.

■ It is a cardinal rule of statutory construction that statutes relating to the same subject matter are to be read together and reconciled whenever possible to avoid nullification of one statute by another. (*Kalina* v. *San Mateo Community College Dist.* (1982) 132 Cal.App.3d 48, 53 [183 Cal.Rptr. 12].) ■ In order to reconcile sections 760 and 761, we conclude that the language "agent holding the contract" (§ 761) refers specifically to the agent under a *listing* contract as described in section 760.

Section 761 provides for two alternative ways of awarding commissions where there is an overbid at the time of confirmation. If the purchaser is

"not procured by the agent holding the contract" (the agent with whom an estate may enter into a listing agreement under § 760), then the section permits a division of the commission between the listing agent and the agent representing the successful bidder. Alternatively, where the successful bidder has no agent then the "agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him." (§ 761.)

The underlying rationale for these provisions is to compensate agents for the services they render to the estate. (*Estate of Cattalini, supra,* 97 Cal.App.3d 366, 375.) Where one agent has contracted to list the property and market it he has rendered services to the estate. The value of his commission will be reduced if the offer he produces is overbid at confirmation by a purchaser represented by a second agent.

In the case before us Keyland rendered no services to the estate. It represented Andersen in presenting his offer to the referee. The only contractual agreement between Keyland and the estate was a provision for a commission contained in Andersen's offer, which offer was accepted by the referee, but rejected by the court.

Keyland relies on *Estate of Baldwin* (1973) 34 Cal.App.3d 596 [110 Cal.Rptr. 189], for the proposition that there was a contract between Keyland and the estate based upon the purchase agreement and deposit receipt signed by the referee which provided for a six percent commission to Keyland. The challenge to the commission in *Baldwin* was made precisely on the grounds that a written bid and an acceptance signed by the agent (who was also the unsuccessful bidder) and by the coexecutrices was insufficient to satisfy the requirement of a written contract under section 760. The court concluded that the bid and acceptance was adequate and proceeded to approve an allocation of the commission under section 761 between the agent and the agent of the successful overbidder. *Baldwin,* however, has been criticized on other grounds by another division of this district. (*Estate of Toy, supra,* 72 Cal.App.3d 392, 395 [criticizing the *Baldwin* court's decision to permit an unsuccessful bidder who was acting as his own agent to collect a commission in his capacity as real estate broker].)

Keyland claims that it was sufficient service to the estate for them to provide Andersen's offer which, in effect, established a minimum sale price for the property. Whatever incidental benefit this may have conferred on the estate, we cannot conclude that it was a benefit envisioned by the Legislature when it authorized payment of a full commission to the agent who returns the original bid. (§ 761.) Such a commission would only be justified where the agent who obtained the original bid was the listing agent. To read the

section as Keyland proposes would be to reward an agent who produces the low offer with his full commission at the expense of the estate.

The order directing payment of real estate commission is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

Kline, P. J., and Smith, J., concurred.