[No. A058988. First Dist., Div. One. Mar. 14, 1994.]

FLOYD C. ODEN et al., Plaintiffs and Respondents, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, Jose R. Guerrero and S. Michele Inan, Deputy Attorneys General, William C. Katzenstein, County Counsel, Robert M. Pepper, Principal Deputy County Counsel, and William D. Kenison, Deputy County Counsel, for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, Mark L. Hefter, Smith & Peltzer, Wesley W. Peltzer, Best, Best & Krieger, Dallas Holmes, Jeffrey V. Dunn and Eric L. Garner as Amici Curiae on behalf of Defendants and Appellants.

Davis, Cowell & Bowe, Richard G. McCracken, W. David Holsberry and Philip Paul Bowe for Plaintiffs and Respondents.

## Opinion

**STRANKMAN, P. J.**—A plaintiff class of pensioners under the Public Employees' Retirement System (PERS) and its class representatives obtained judgment directing issuance of a writ of mandate commanding the respondent class of more than 1,350 California public agencies and the Board of Administration of PERS to increase pensioners' retirement allowances.

The trial court judgment rests on an interpretation of Government Code section 20022's definition of "compensation," upon which pension contributions and allowances are calculated. "Compensation" is defined to include an employer "pick up" payment of employee pension contributions meeting federal taxation law standards, but exclude employers' payments credited as employee pension contributions. (Gov. Code, § 20022, subds. (a)(6), (b)(6).)[1] At issue is the characterization of employer payments made in addition to an employee's salary and credited as an employee pension contribution—payments which meet the literal definitions of both an employer "pick up" and an employer payment credited as an employee contribution. The trial court characterized such payments as "compensation," thereby requiring higher retirement allowances and increased contributions.

We reject the trial court's statutory interpretation and conclude that employer-paid pension contributions made on an employee's behalf and paid in addition to an employee's salary are not "compensation" within the meaning of Government Code section 20022. We reverse the judgment.

### Procedural Background

Respondents Floyd C. Oden and William T. Shannon are retired public agency employees. They and respondent Retired Public Employees Association represent the respondent class of former California public agency employees and PERS pensioners for whom tax deferred, employer-paid pension contributions were made on their behalf, in addition to stated salary. Appellants are the Board of Administration of PERS and a class of public agency employers who paid the salary-addition pension contributions credited to their employees. Respondents sued appellants, disputing their exclusion of employer-paid salary-addition member contributions from reportable

---

[1]Government Code section 20022 provides, in relevant part: "(a) 'Compensation' includes: . . . (6) employer 'pick up' of member contributions which meets the requirements of Section 414(h)(2) of the Internal Revenue Code of the United States . . . . [¶] (b) 'Compensation' shall not include: . . . (6) employers' payments which are to be credited as employee contributions for benefits provided by this system, or employers' payments which are to be credited to employee accounts in deferred compensation plans; provided, that amounts deducted from a member's wages for participation in a deferred compensation plan . . . shall not be considered to be employer's payments."

compensation and demanding increased retirement benefits based on compensation levels augmented by the amount of unreported contributions.

The trial court granted judgment issuing a writ of mandate commanding appellant class representative County of Riverside and the class of public agencies to report to PERS as compensation all salary-addition member contributions paid since October 3, 1985, and directing the Board of Administration of PERS to pay respondent pensioner class members increased retirement benefits which reflect the higher compensation level, retroactive to December 24, 1987.

## DISCUSSION

### I. *The Public Employees' Retirement System*

■ The Public Employees' Retirement Law (PERL, Gov. Code, § 20000 et seq.) establishes PERS, a retirement system for employees of the state and participating local public agencies.[2] PERS is a prefunded, defined benefit plan which sets an employee's retirement benefit upon the factors of retirement age, length of service, and final compensation. (*City of Sacramento* v. *Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478 [280 Cal.Rptr. 847].) Retirement allowances are therefore partially based upon an employee's compensation. An employee's compensation is not simply the cash remuneration received, but is exactingly defined to include or exclude various employment benefits and items of pay. (§ 20022.) The scope of compensation is also critical to setting the amount of retirement contributions, because PERS is funded by employer and employee contributions calculated as a percentage of employee compensation. (*City of Sacramento* v. *Public Employees Retirement System, supra*, at p. 1479.)

### II. *Taxation of Pension Contributions*

As indicated above, PERS is funded by both employer and employee contributions. These two sources of contributions, distinguished more by form than substance, are nevertheless subject to disparate tax treatment. "The distinction between 'employers' contributions' and 'employees' contributions' to qualified pension plans is almost wholly nominal. It is a matter of indifference to an employer whether it pays $30,000 salary to the employee plus $3,000 to a pension plan on the employee's behalf, or instead $33,000 to the employee, of which it sends $3,000 to a pension plan. . . . But the tax consequences of the distinction are substantial." (*Howell* v. *United States* (7th Cir. 1985) 775 F.2d 887.) Employers' contributions are

---

[2] All further statutory references are to the Government Code, unless otherwise indicated.

not taxable income to the employee until benefits are paid upon separation or retirement, whereas employees' contributions are ordinarily taxable income when made, but not taxed at disbursement of benefits. (*Ibid.*) Accordingly, tax deferral is achieved where retirement contributions are made by the employer, rather than the employee.

However, where designated employee contributions are required by the system, as with today's PERS, tax deferral cannot be accomplished by reallocating all contributions to the employer. Employee contributions are mandatory and, once designated as employee contributions, are generally forbidden from being favorably treated as employer contributions under federal tax law. (26 U.S.C. § 414(h)(1).) But an exception has been recognized for state and local governmental employers, in recognition of various restraints preventing public employers from reallocating contributions to themselves and eliminating employee contributions. (*Foil* v. *C.I.R.* (5th Cir. 1990) 920 F.2d 1196, 1202.)

Designated employee contributions to a qualified governmental pension plan are treated as tax deferred employer contributions where the employer "picks up" the employee contributions. (26 U.S.C. § 414(h)(2).)[3] A "pick up" allows governmental employers "to control the tax consequences of pension contributions" and has two features: (1) the government employer formally designates employee contributions as employer contributions, for federal tax purposes; and (2) the employee does not have the option of directly receiving the contribution payments. (*Howell* v. *United States, supra,* 775 F.2d at pp. 888, 890.) The federal "pick up" law satisfies PERS's need for dual characterization of retirement contributions: a contribution is designated an employee contribution under state retirement law but treated as an employer contribution under federal tax law. (See *id.,* at p. 888.)

III. *Types of Employee Contributions*

Employees' contributions to PERS are currently made in two primary ways: (1) employee-paid salary deduction; and (2) employer-paid salary

---

[3]Internal Revenue Code section 414 provides, in relevant part: "(h) Tax treatment of certain contributions.— [¶] (1) In general. —Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed— [¶] (A) to an employees' trust described in section 401(a), or [¶] (B) under a plan described in section 403(a), shall not be treated as having been made by the employer if it is designated as an employee contribution. [¶] (2) Designation by units of government. —For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions."

addition. In the first method, a pension contribution is withheld from the employee's stated salary. Effectively, "[t]he government establishes two 'salaries.' One, for state purposes, is the base from which contributions are withheld; the other, for federal purposes, is a lower salary from which nothing is withheld; the difference between the salary for state purposes and the salary for federal purposes is the 'picked up' contribution." (*Howell* v. *United States, supra*, 775 F.2d at p. 888.) The employee pays income tax on his reduced wages, less the amount of the pension contribution. (*Ibid.*) In the second method, the employer directly picks up and assumes the pension contribution, "topping up the total compensation so that the employee then receives his full stated salary without a deduction for pensions." (*Ibid.*) The employee pays income tax on his stated salary; he does not pay tax on the pension contribution.

Both salary deduction and salary addition methods of paying employees' contributions are tax-advantaged "pick ups" under federal law. (*Howell* v. *United States, supra*, 775 F.2d at p. 888.) However, the two methods take advantage of distinct aspects of the dual characterization permitted under the pickup law. An employee-funded salary deduction is an employee payment from salary, which would not be tax deferred absent the "pick up" law which permits it to be treated as an employer contribution under federal law. An employer-funded salary addition is an employer payment exceeding salary which would be tax deferred but could not be designated as an employee contribution under state law without the "pick up" statute.

IV. *PERS Characterization of Employee Contributions*

While both methods of paying employees' contributions are "pick ups" under federal law, not all employees' contributions have been considered "compensation" under California law. PERS regards employee-paid salary deductions as compensation while excluding employer-paid salary additions from compensation. The employee's stated salary is treated as compensation by PERS, regardless of deducted or added pension contributions.

Class representative County of Riverside began paying pension contributions on its employees' behalf and in addition to salary in 1981, expressly excluding the payment from "base salary" in its memorandum of understanding with its employees. The state instituted employee-paid salary deduction contributions in 1985, and various public agencies followed suit. The PERS Board has distinguished the two practices over their years of operation, and interpreted section 20022 to exclude employer-paid salary addition contributions from "compensation."

■ However, the PERS Board has not regarded all employer-paid member contributions as within section 20022, subdivision (b)(6)'s exclusionary

provision, recognizing an exception for a few public agencies which have stipulated in collective bargaining agreements to report the contributions as compensation. These agencies have agreed with their employees to include the contributions in reportable compensation "as if they were a part of the employee's base salary."

The Board distinguishes such payments from the standard employer-paid salary addition contributions because the bargaining agreements say the employer payments will be treated "as if" they were included in salary— even though made in addition to salary. The Board's distinction among employer-paid member contributions rests entirely upon the characterization elected in bargaining agreements and is untenable because public agencies are not free to define their employee contributions as compensation or not compensation under PERL—the Legislature makes those determinations. Statutory definitions delineating the scope of PERS compensation cannot be qualified by bargaining agreements. (*Service Employees Internat. Union* v. *Sacramento City Unified School Dist.* (1984) 151 Cal.App.3d 705, 709-710 [198 Cal.Rptr. 884].)

The PERS Board's attempted distinction within the category of employer-paid member contributions fails because it has no statutory support. Contrary to respondents' argument, this failure does not prove that all distinctions among member contributions are invalid. The question is whether the Legislature distinguished employer-paid member contributions made in addition to salary from employee-paid member contributions deducted from salary. The answer lies in section 20022's definition of "compensation" and the legislative meaning attached to the definition.

## V. *The Definition of Compensation*

### A. *The Text*

"To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) As always, it is legislative intent that controls, and a statute's "plain meaning" is adopted because courts trustfully assume the Legislature uses words in their usual sense and does not attach private meanings to commonly used words. Statutory interpretation begins with the text and will end there if a plain reading renders a plain meaning: a meaning without ambiguity, uncertainty, contradiction, or absurdity. If a plain reading of the statute fails, we must look further for legislative intent, knowing that words are inexact symbols without intrinsic significance and that the Legislature may intend an

unusual meaning, whether by design or inadvertence.[4] "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Section 20022 does not admit of a plain reading, but contains a stark contradiction within its separately enacted parts. Subdivision (b)(6), the language of which first appeared in 1976, defines "compensation" to *exclude* all "employers' payments which are to be credited as employee contributions for benefits provided by this system . . . ." (Stats. 1976, ch. 1115, § 1, p. 5007 [§ 20022.2]; Stats. 1977, ch. 134, § 6, p. 571 [recodified as § 20022, subd. (b)(6)].) Subdivision (a)(6) (first enacted as subdivision (a)(5) in 1985) defines "compensation" to *include* an "employer 'pick up' of member contributions which meets the requirements of Section 414(h)(2) of the Internal Revenue Code of the United States." (Stats. 1985, ch. 1497, § 3, p. 5520.)

The pension contribution at issue here—an employer-funded salary-addition payment of an employee's contribution—meets the literal, common definitions of both a "pick up" under section 20022, subdivision (a)(6) and an employer payment credited as an employee contribution under section 20022, subdivision (b)(6). Of course, subdivision (a)(6)'s meaning is not facially obvious and requires reference to the Internal Revenue Code, commissioner rulings, and judicial constructions to see that it applies to employer-funded salary-addition pension contributions. Nevertheless, the Legislature is presumed to have been aware of a word's settled legal meaning and to have adopted it in framing legislation. (*Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1096 [271 Cal.Rptr. 44].) This presumption, as all else, bows to evidence of contrary legislative intent. Given the contradiction within section 20022's definition of compensation, we cannot be content with such a presumption.

## B. *Intrinsic Aids*

Where, as here, the text itself is inconclusive in revealing legislative intent, we probe statutory context. Various principles guide our interpretation in this realm. Relevant to this case is the principle that statutes in pari materia—upon the same matter—are to be construed together and harmonized to avoid nullification of one statute by another. (*Simonini* v. *Passalacqua* (1986) 180 Cal.App.3d 400, 404 [225 Cal.Rptr. 588].) Subdivisions

---

[4]The courts are compelled to follow legislative intent even if it leaps through a looking glass. " 'When *I* use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.' [¶] 'The question is,' said Alice, 'whether you *can* make words mean so many different things.' [¶] 'The question is,' said Humpty Dumpty, 'which is to be master—that's all.' " (Lewis Carroll, Through the Looking-Glass, ch. 6.) The Legislature is master of the words it uses, even if it engages in Humpty Dumpty's confusing practice of departing from the usual and ordinary meaning of words.

(a)(6) and (b)(6) of section 20022 were separately enacted, but they relate to a single subject and should be read in tandem to effectuate the overall legislative scheme in defining PERL compensation.

The trial court reached a disharmonious interpretation of section 20022, limiting subdivision (b)(6) to employer-paid contributions that do not qualify under Internal Revenue Code section 414(h)(2). The effect of that resolution is to make earlier enacted subdivision (b)(6) a nullity, since PERS does not administer unqualified retirement plans and there is no tax or other financial advantage to making unqualified contributions. While a later-enacted law takes precedence over an earlier, irreconcilable law, repeals by implication are not favored and will not be found if the laws can be harmonized on any rational basis. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].)

A rational basis for reconciliation of subdivisions (a)(6) and (b)(6) exists, and is derived from a reading of section 20022 as a whole. The general structure and composition of the section reveals an exclusion of employer-funded salary additions for deferred compensation and benefit programs, but an inclusion of amounts deducted from salary for the same plans. (§ 20022, subds. (a)(3), (a)(4), (a)(5), (a)(10), (b)(6), (b)(14).) It appears the Legislature intended "compensation" to coincide with an employee's stated salary without including employer-paid support of deferred compensation and benefit programs. Accordingly, we read subdivision (b)(6) to exclude employer-paid salary-addition employee contributions from "compensation," and subdivision (a)(6) to include employee-paid salary-deduction contributions in "compensation."

Our interpretation of subdivision (b)(6) comports with the statutory construction doctrine of *noscitur a sociis*. A word of uncertain meaning may be known from its associates and its meaning "enlarged or restrained by reference to the object of the whole clause in which it is used." (*Vilardo* v. *County of Sacramento* (1942) 54 Cal.App.2d 413, 420 [129 P.2d 165].) Section 20022, subdivision (b)(6), excludes from compensation "employers' payments which are to be credited as employee contributions for benefits provided by [PERS], or employers' payments which are to be credited to employee accounts in deferred compensation plans; provided, that amounts deducted from a member's wages for participation in a deferred compensation plan . . . shall not be considered to be employer's payments." "Employers' payments which are to be credited as employee contributions" under PERS—the focus of our concern—are grouped with other employer-paid deferred compensation benefits and distinguished from salary-deducted payments.

## C. *Extrinsic Aids*

Our understanding of section 20022 is also based on a careful reading of legislative history, which is the next level of statutory construction where textual and contextual review does not reach a clear and certain resolution. We consider not only the specific history of legislative activities terminating in the enactment of the statute at issue, but also the broader history and impetus for the statute. We must not myopically disregard the milieu of legislative acts: "[i]n enforcing command of a statute, both the policy expressed in its terms and object implicit in its history and background should be recognized." (*People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].)

PERL's recent history is one of adaptation to meet demands for tax-advantaged retirement benefits. It has frequently been revised to convert taxable employee contributions into tax-deferred employer contributions. As discussed earlier, Internal Revenue Code section 414(h)(2), was established in 1974 to permit state and local governmental agencies to denominate employee contributions as employer contributions for federal tax purposes. California public agencies began to pay employees' contributions, both "normal" contributions (required amounts for participation) and "additional" contributions (optional amounts to increase benefits). (§§ 20027, 20630, 20632.) These employer-assumed payments preceded explicit statutory authorization. PERL was soon revised to accommodate them, and later revised to permit employee salary deductions.

### i. *Enactment of Section 20022.2, Subdivision (b)(6)'s Predecessor*

In 1976, a PERS-sponsored bill was enacted into law, adding section 20022.2, providing: "Notwithstanding any other provision of this part, 'compensation' shall not include *employers' payments which are to be credited as employee contributions for benefits provided by this system*, or employers' payments which are to be credited to employee accounts in deferred compensation plans; provided, that amounts deducted from a member's wages for participation in a deferred compensation plan . . . shall not be considered to be employer's payments." (Stats. 1976, ch. 1115, § 1, p. 5007, italics added.)

This section was later repealed and recodified as section 20022, subdivision (b)(6), without material change, upon consolidation of PERL "compensation" definitions in the following year. (Stats. 1977, ch. 134, § 6, p. 571.) The amendment of section 20022 to include subdivision (b)(6) was described by the Legislative Counsel as simply a "technical, nonsubstantive"

change of consolidation, and subdivision (b)(6) has remained unchanged from that time. Accordingly, it is the legislative history of subdivision (b)(6)'s predecessor which must guide our interpretation.

   ii.  *The Meaning of Subdivision (b)(6)'s "Employers' Payments Credited as Employee Contributions"*

The purpose of section 20022, subdivision (b)(6)'s predecessor is unmistakable. Public agency employers were making tax-advantaged pension contributions on their employees' behalf, and the Legislature wished to ratify the existing PERS practice of excluding the payments from compensation. The Assembly Committee on Public Employees and Retirement, in its analysis of subdivision (b)(6)'s predecessor, explained that some employers at the time were making payments credited as additional employee contributions, and those payments were being treated as not "compensation." The committee analysis described the bill as "declaratory of existing law," in providing that "employer payments which are to be credited as employee contributions (includes additional contributions and normal contributions) . . . shall not be considered as 'compensation' for retirement purposes."

Committee materials are properly consulted to understand legislative intent, since it is reasonable to infer the legislators considered explanatory materials and shared the understanding expressed in the materials when voting to enact a statute. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 382, fn. 19 [267 Cal.Rptr. 569, 787 P.2d 976].) Here, the Assembly Committee analysis clearly indicates that "employer payments" mean actual payments, in addition to salary. The committee's reference to a current practice of employer-paid additional contributions can only refer to payments in excess of salary.

Respondents make their own use of the committee's reference to the practice of employer-paid additional contributions by suggesting an alternative interpretation of section 20022, subdivision (b)(6) limiting it to additional contributions. However, the committee expressly states that the subject employer payment "includes additional contributions and normal contributions," in attunement with pending proposals authorizing employer-paid normal contributions.[5]

Respondents' claim to increased retirement benefits is defeated by the obvious legislative intent to encompass all employer-paid pension contributions, and to exclude them from "compensation." The Legislative Counsel

---

[5]In further support of their interpretation, respondents point to the Legislative Counsel's opinion that section 20022.2 related to additional contributions alone. That opinion, contained in the record of distinct, subsequent legislation, is of no force given an unequivocal, contemporaneous expression by the Legislature to include both normal and additional contributions.

described the bill as follows: "Existing Public Employees' Retirement Law defines 'compensation' for retirement purposes as including most forms of remuneration paid to or on behalf of employees. [¶] This bill would exclude from such definition payments by an employer on behalf of an employee which are credited as employee contributions for benefits provided by the system, and payments made by an employer on behalf of an employee to employee accounts in deferred compensation plans." The committee analysis forcefully states: "Effect of bill is to insure that no contributions will be collected on account of such *employer payments,* and that they *shall not be used to increase retirement and survivor allowances.*" (Italics added.)

iii. *Related Legislation Authorizing Employer Payments of Employee Contributions*

In the year following passage of section 20022, subdivision (b)(6)'s predecessor, PERL was revised to authorize reduction of an employee's normal contribution by up to 50 percent, to be paid by an equalizing increase in the local agency employer's contribution. (Stats. 1977, ch. 601, § 1, pp. 1975-1976.) The law was designed to expand existing law, which permitted employer payments of additional employee contributions, but was silent as to normal contributions. Rather than permitting employer payment of the employee's normal contribution, the bill (enacted as section 20614) was structured as a reduction of the employee's contribution so that the payments went to the employer's account and did not vest until retirement or death. An earlier version of section 20614 which permitted immediate vesting was pending when subdivision (b)(6)'s predecessor was under consideration in 1976, but was vetoed by the Governor.

At the time section 20614 was enacted, many public agencies were acting without specific statutory authorization. A PERS enrolled bill report explained that "[m]any contracting agencies are already paying normal contributions on behalf of their members. Some treat them as salary increases and pay additional retirement contributions on them." (Public Employees' Retirement System, Enrolled Bill Rep. for Sen. Bill No. 749 (1977-1978 Reg. Sess.) Sept. 1977.) These practices were not sanctioned by the Legislature. In fact, section 20614 commanded an alternative method of meeting an employee's pension contribution obligation, with reduction of the obligation rather than direct payment of it, and supplanted the practices described in the bill report.

However, the limitations built into section 20614 soon succumbed to labor's demand for better tax-advantaged benefits. The 50 percent cap was immediately increased to permit full reduction of the employee's contribution, validating the practice of some public agencies, which were paying

their employees' entire contribution without express statutory permission. (Stats. 1978, ch. 1177, §§ 1, 2, p. 3789.) In 1980, section 20614 was repealed and replaced by section 20615 allowing payment of employees' normal contributions to be credited to employees' accounts, rather than the employer agencies' accounts as previously legislated. (Stats. 1980, ch. 1168, §§ 8, 10, p. 3932.) The same 1980 bill enacting section 20615 also expanded section 20027's definition of "normal contribution." (Stats. 1980, ch. 1168, §§ 3, 10, p. 3932.) "Normal contributions," previously defined as "contributions by members," were now defined as "contributions required to be paid by a member," including contributions "which are *in fact* paid on behalf of a member by a contracting agency." (Stats. 1980, ch. 1168, § 3, p. 3932, italics added; Stats. 1937, ch. 806, § 2, p. 2282.) Authorization to make employer payments of employee contributions was extended to school employers in 1982 and the state in 1983. (§§ 20615, 20616; Stats. 1982, ch. 21, § 2, pp. 38-39; Stats. 1982, ch. 863, § 1.5, p. 3213; Stats. 1983, ch. 794, § 1, p. 2908.)

True to the general history of PERL, practice preceded permission. The change from a reduction of an employee's pension obligations to a direct payment of that obligation was spurred by the practice of some agencies, which simply began paying their employees' contributions despite the limitations expressed in section 20614. In the words of a bill analysis prepared by the Assembly Committee on Public Employees and Retirement, section 20615 replaced section 20614 to "recognize the situation" and legitimize its continuation.

The 1980 legislation amending section 20027 and adding section 20615 freed local public agencies to pay their employees' contributions directly, and the 1983 legislation extended that freedom to the state with the addition of section 20616. Read together with section 20022, subdivision (b)(6), those employer-paid salary-addition employee contributions are not to be included in compensation. At this point in PERL's history, there is little room for controversy on the meaning of subdivision (b)(6). However, a practice of employee-funded salary deductions to pay contributions was soon to develop, and the imprecise use of the term "pick up" in defining that practice engendered the present dispute.

### iv. *Enactment of Subdivision (a)(6)*

In January 1985, following a favorable ruling of the Internal Revenue Service, the Governor of California issued an executive order, directing PERS to implement a "pick up" program under Internal Revenue Code section 414(h)(2), to be "accomplished through a *reduction in wages . . . .*" (Governor's Exec. Order No. D-42-85, Jan. 29, 1985, italics added.) In

March 1985, PERS circulated a bulletin to employers explaining the new "pick up" program and distinguishing it from employer-paid member contributions made in addition to salary (called an "EPMC" by PERS): "It is important to separate the employer 'pick-up' program . . . and the Employer Payment of Member Contributions (EPMC) . . . . Under the EPMC program, the employer actually pays the member contribution and the member's pay stub does not reflect a deduction from gross salary for retirement contributions."

Legislation was soon considered for the expressed purpose of accommodating the state's new practice of salary-deduction pension contributions. In the month the PERS bulletin was circulated, PERS-sponsored legislation was introduced to amend section 20022's definition of compensation. The portion to become subdivision (a)(6) was added by amendment in April 1985. The compensation definition was revised to include as compensation "employer 'pick up' of member contributions which meets the requirements of Section 414(h)(2) of the Internal Revenue Code of the United States." (Stats. 1985, ch. 1497, § 3, p. 5520.) Subdivision (b)(6) excluding "employers' payments which are to be credited as employee contributions for benefits provided by this system" remained unchanged.

Despite the all-encompassing language of subdivision (a)(6), legislative history reveals consistent reference to the enactment as establishing a program of salary deductions which are treated as employer payments of employee contributions as an "accounting mechanism" to gain preferred tax treatment. While the common, legal meaning of a "pick up" under federal tax law includes salary-addition and salary-deduction pension contributions, the Legislature intended a different meaning that limited a "pick up" to salary-deduction "pick ups."

An analysis by the Senate Committee on Public Employees and Retirement describes section 20022, subdivision (a)(6) as "a technical amendment in the PERS definition of 'compensation' " and explained that, under the "pick up" program, "the employee receives more take home pay, at no cost to the employer." The law was repeatedly referred to as a "no cost" codification of existing policy. Nothing in the legislative history supports the view that the established practice of excluding employer-funded salary-addition employee contribution payments from "compensation" under subdivision (b)(6) was meant to be nullified by subdivision (a)(6), which was concerned with only employee-paid salary deductions.

D.   *Consequences of Statutory Construction*

Courts "must consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than

defeat the statute's purpose and policy." (*Sylva* v. *Board of Supervisors* (1989) 208 Cal.App.3d 648, 654 [256 Cal.Rptr. 138].) ■ Section 20022, subdivision (b)(6), was enacted to prevent increased pension allowances and costs from the payment of employees' retirement contributions by public agencies. Employer-paid member contributions were authorized to reduce employees' income tax liability; they were not meant to increase retirement awards. Section 20022, subdivision (a)(6) complements the policy of subdivision (b)(6). It ensures that an employee's payment of his or her retirement contribution through a salary deduction is not construed as a compensation reduction under PERS. Together, subdivisions (a)(6) and (b)(6) guarantee that two employees receiving the same stated salary receive the same retirement benefit—regardless of the method used to gain tax advantages.

■ Respondents' construction of section 20022 to include as compensation both employer-paid salary-addition and employee-paid salary-deduction member contributions defeats the purpose and policy of the law. Respondents would have us nullify subdivision (b)(6) and grossly expand the intended reach of subdivision (a)(6). Subdivision (a)(6), designed as a "no cost" codification of existing policy, would be read to destroy existing policy excluding employer-paid member contributions from compensation at a cost of millions of dollars in additional pension contributions. We reject the proposed construction as contrary to the intention and policy of section 20022.

### DISPOSITION

The judgment is reversed and the trial court is directed to deny the petition for a writ of mandate. Appellants to recover costs on appeal.

Stein, J., and Dossee, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 16, 1994. Mosk, J., was of the opinion that the petition should be granted.