[No. B053758. Second Dist., Div. Five. Oct. 29, 1991.]

ROBERT FELICIANO, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION et al., Defendants and Appellants.

COUNSEL

Richard H. Koppes, Paul M. Ryan, Goldstein & Kennedy, C. Craig Woo and Gregory G. Kennedy for Defendants and Appellants.

Seth J. Kelsey for Plaintiff and Respondent.

OPINION

**BOREN, J.**—The trial court granted respondent's petition for a writ of mandate after concluding that the Public Employees' Retirement Law (Gov.

Code, § 20000 et seq.) required that respondent be reclassified as a "safety member" of the retirement system. Our reading of the applicable statutes leads us to the conclusion that respondent is not entitled to reclassification. Accordingly, we reverse the trial court's judgment.

FACTS

Respondent Robert Feliciano was employed by appellant Housing Authority of the County of Los Angeles (Housing Authority) as director of police and safety from June 1979 until September 1985. As director of police and safety, Feliciano was classified as a "miscellaneous" employee for purposes of determining the retirement benefits he would receive from appellant Public Employees' Retirement System (PERS). Feliciano's efforts to have his PERS status reclassified to "local safety member" form the basis for this appeal.

The testimony at the administrative hearing established that Feliciano's position at the Housing Authority was primarily managerial, though he did on occasion wear a uniform, always carried a firearm, and was expected to respond to criminal incidents in a law enforcement capacity by taking control of the scene and directing other police officers, and by making arrests if necessary. He spent 35 to 40 percent of his time performing police work out in the field. Feliciano, who was formerly a deputy sheriff, ran a full-service police department for the Housing Authority.[1]

Appellants take the position that the peace officer duties performed by Feliciano as director of police and safety do not entitle him to be classified as a safety member of PERS, as a matter of law. This is so, appellants argue, because the Housing Authority has not elected to provide safety member status to any of its employees, regardless of whether they work in law enforcement. Respondent, on the other hand, contends that he is entitled to safety member status as a matter of law because he was engaged in active law enforcement.

Appellants' reading of the statutes was accepted by the administrative law judge and the PERS Board of Administration. The trial court, on a petition for a writ of mandate, concurred with respondent's reading of the statutes. ■ Because this appeal involves the interpretation of the classification statutes rather than a factual dispute, we are not bound by either

---

[1]In regard to Feliciano's duties, PERS found that he "was on duty twenty-four hours per day with direct responsibility for supervision of the police force of the Housing Authority and was expected, as Chief of the Police Force, to be prepared personally to [respond] to calls for police service with respect to all incidents within the jurisdiction of the Los Angeles County Housing Authority. [Feliciano] was expected to and did carry a firearm in the performance of his duties. His duties involved active law enforcement as a peace officer."

PERS's determination or the trial court's determination, and must make our own independent reading of the statutes to determine whether Feliciano is entitled to safety member status. (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 576 [108 Cal.Rptr. 293]; *Toulumne County Deputy Sheriffs' Assn.* v. *Board of Administration* (1989) 209 Cal.App.3d 1236, 1238 [257 Cal.Rptr. 824].)

### DISCUSSION

Government Code section 20019, as it appeared during Feliciano's tenure at the Housing Authority, provided "safety member" status—the classification sought by Feliciano—to "all local policemen, firemen, safety officers, and county peace officers employed by a contracting agency who have by contract been included within this system."[2]

Feliciano argues that he is a "local safety officer," which entitles him to safety membership in PERS pursuant to section 20019. The definition of a safety officer is contained in section 20019.4: it includes "any officer or employee of a public safety department of a contracting agency," with certain enumerated exceptions not applicable here, who are employed and qualify as patrolmen or equal or higher rank, irrespective of the duties to which they are assigned.

Thus, to establish that Feliciano falls within the purview of section 20019.4, it must be shown that he was employed by a "public safety department of a contracting agency." The Housing Authority is a contracting agency by virtue of a written contract between it and PERS. The Government Code does not define what a "public safety department" is. However, the legislative history of section 20019.4 reveals that the Legislature did not intend the term to encompass the police officers of a county housing authority. When section 20019.4 was added in 1977, the letter conveying the legislation to the Governor, following its passage in both legislative houses, stated that "Current retirement law defines policeman and fireman in terms of employment with a police or fire department. However, *some cities have a public safety department where an individual serves as both policeman and fireman*. Thus, the current definitions are technically deficient. This bill would add Government Code section 20019.4 to include in the definition of 'local safety officer' an employee of a public safety department." (Italics added.)

Thus, section 20019.4 was intended to cover the hybrid police/fire department found in some cities. These localities lack discrete police and fire

---

[2]All future statutory references are to the Government Code unless otherwise indicated.

departments, and the individuals employed there perform both functions under the rubric "public safety department." The evidence in this case shows that Feliciano was active in law enforcement. However, nothing in the record suggests that he or any of the officers he supervised performed firefighting activities. And nothing here suggests Feliciano or his subordinates were part of a separate "department" organized by the Housing Authority to fight fires and provide law enforcement. Therefore, Feliciano was not employed by a public safety department of a contracting agency, and section 20019.4 does not apply here.

■ Although Feliciano does not qualify as a local safety officer, it is apparent that he is a "local policeman" under section 20019. Local policemen may be treated as safety members of PERS *if* their employing agency elects to designate them as such in its contract with PERS. The public employees' retirement law in section 20020.7 defines a "local policeman" as, among other things, "any officer or employee of a contracting agency other than a city or a county who is a peace officer as defined in the Penal Code and whose principal duties consist of active law enforcement . . . ." The undisputed facts of this case establish that Feliciano was required to carry a firearm at all times, and to spearhead the law enforcement response to criminal incidents occurring on properties within the jurisdiction of the Housing Authority. As director or chief of police, it cannot be gainsaid that Feliciano's principal duty was to actively enforce the law himself or to direct subordinates in enforcing the law. As such, Feliciano was a "peace officer" as that term is defined in former Penal Code section 830.4, subdivision (i) (now Pen. Code § 830.31, subd. (d)).

Although Feliciano's duties during his tenure at the Housing Authority fell within the definition of a "local policeman," as defined in section 20020.7, he is nevertheless not entitled to safety member benefits because the Housing Authority did not contract with PERS to provide him with these benefits. (*Charles* v. *Board of Administration* (1991) 232 Cal.App.3d 1410, 1412-1414 [284 Cal.Rptr. 106].) Had Feliciano been hired by the Housing Authority prior to January 1, 1976, he would have been entitled to reclassification and safety member benefits under a grandfather clause contained in section 20020.7. (*Boxx* v. *Board of Administration* (1980) 114 Cal.App.3d 79, 88-89 [170 Cal.Rptr. 538].)[3] However, employees such as Feliciano who were hired after 1976 are subject to their employing agency's discretionary decision to include them as safety members in its contract with PERS: "The

---

[3]The grandfather clause reads, "The provisions of this section shall apply to any contracting agency which is not a city or county with respect to any of its employees who were local policemen within the meaning of Section 20020 prior to its amendment at the 1975-76 Regular Session and in employment on the effective date of such amendment."

provisions of this section [20020.7] shall not otherwise apply to the employees of any contracting agency nor to such agency unless and until the contracting agency elects to be subject to the provisions of this section by amendment to its contract with the board made as provided in Section 20461.5 or by express provision in its contract with the board."

The record demonstrates that the Housing Authority has not elected to treat Feliciano as a local policeman entitled to safety member benefits by amending its contract with PERS or by express provision in its original contract with the board. In fact, the contract and its amendments expressly exclude safety members. Because the Housing Authority has not availed itself of the option offered to it by the Legislature in section 20020.7, Feliciano cannot be reclassified as a safety member of PERS. (*Schaeffer* v. *Public Employees' Retirement System* (1988) 202 Cal.App.3d 609, 615 [248 Cal.Rptr. 647].)

### DISPOSITION

The judgment is reversed. Each side to bear its own costs on appeal.

Turner, P. J., and Ashby, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 29, 1992.