[No. B109647. Second Dist., Div. Five. Oct. 16, 1997.]

POMONA POLICE OFFICERS' ASSOCIATION, Plaintiff and Appellant,
v.
CITY OF POMONA et al., Defendants and Respondents.

## COUNSEL

Silver, Hadden & Silver and Stephen H. Silver for Plaintiff and Appellant.

Liebert, Cassidy & Frierson, Richard M. Kreisler and Peter J. Brown for Defendants and Respondents.

## OPINION

**GRIGNON, J.**—Appellant Pomona Police Officers' Association appeals from the judgment denying the Association's petition for writ of mandate

entered in favor of respondent City of Pomona.[1] The Association seeks to compel the City to take all action necessary to increase the compensation for retirement purposes of its members by the amount of employer-paid employee contributions to the Public Employees' Retirement System (PERS). The collective bargaining agreement between the Association and the City gives the members of the Association the option to convert the employer-paid employee contributions to salary for retirement purposes. We conclude that this retirement conversion option violates the Public Employees' Retirement Law (PERL) and is thus unenforceable. We conclude further that the City cannot be compelled to amend its contract with PERS to retroactively validate the retirement conversion option at a substantial cost to the City. Nor can the City be compelled to provide alternative economic benefits. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The Association is the employee organization recognized by the City as the exclusive representative of all nonmanagement City police officers. Management City police officers are represented by a different employee organization. The City contracts with PERS to provide retirement benefits to City employees in accordance with the provisions of the PERL (Gov. Code, § 20000 et seq.).[2] Pursuant to the PERS contract, City police employees contribute 9 percent of their compensation to PERS. As part of its collective bargaining agreement with the Association, the City has agreed to pay the required PERS employee contribution's of the Association's members. This payment of the employee contribution by the City increases actual net compensation by 9 percent, but does not increase compensation for retirement purposes under the PERL. In 1993, the City and the Association entered into an amendment of the collective bargaining agreement, providing an option to convert the employer contribution into additional compensation for retirement purposes. By this amendment, the parties intended to increase compensation for retirement purposes.

The retirement conversion option provision of the amendment to the collective bargaining agreement reads in full as follows: "A. Effective September 1, 1991, employees with at least twenty (20) years of service as a police officer and at least ten (10) years with the City, shall be allowed the option to convert their 9-percent City-paid PERS member contribution to 9-percent salary for retirement purposes. The higher salary resulting in this option will only apply to employees who take a service retirement. Disability

---

[1]The City Council of the City of Pomona and the City Administrator of the City of Pomona, Severo Esquivel, were also sued. For ease of reference, we refer to all respondents as the City.

[2]All further statutory references are to the Government Code, unless otherwise indicated.

retirement and industrial disability retirement are excluded from this option, unless the work-related disability occurs after this conversion is taken. Employees wishing to exercise this option must do so in writing. [¶] B. This retirement conversion is a one-time option and cannot be revoked, once it is opted for, without specific written approval by the City Administrator. [¶] C. The higher salary resulting from exercising this option shall not be applied to any vacation leave payoff, compensatory leave payoff, sick leave payoff, sick leave buy-back or sick leave conversion plan for which the affected employee may be eligible. [¶] D. The City recognizes the benefit of maintaining a uniform application of the conditions and procedures of the Retirement Conversion benefit among the various safety service units; in response to this recognition and notwithstanding the foregoing provisions, the conditions and procedures applicable to an affected Police employee who seeks to exercise this benefit shall be uniform with and among the conditions and procedures applicable to employees in the other safety service units."

Subsequently, the City informed the Association that it had discovered the retirement conversion option violated the PERL and thus the City would no longer offer the option to the Association's members. Effective July 1, 1994, the PERL was amended to validate a retirement conversion option such as the one contained in the Association's collective bargaining agreement, provided the public entity amend its contract with PERS at a substantial additional cost to the public entity. The City amended its collective bargaining agreement with management police officers to provide for a valid retirement conversion option in exchange for a reduction in the salary of management police officers. The City thereafter amended its contract with PERS as to the retirement conversion option of management police officers. The Association and the City were unable to agree on a similar amendment to the Association's collective bargaining agreement with respect to non-management police officers.

The Association filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085 seeking to compel the City to amend its contract with PERS to validate the retirement conversion option or to take all action necessary to cause the retirement allowance of qualifying members to be increased by the amount of the employer-paid employee contribution to PERS. The trial court denied the petition and entered judgment in favor of the City. The Association filed a timely notice of appeal.

DISCUSSION

*Standard of Review*

■ " 'A traditional writ of mandate under [Code of Civil Procedure] section 1085 is a method of compelling the performance of a legal, usually

ministerial duty[.]' " (*Bollengier* v. *Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1123 [272 Cal.Rptr. 273].) "Generally, a writ will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance." (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].) ■ "When there is review of an administrative decision pursuant to Code of Civil Procedure section 1085, courts apply the following standard of review: ' " '[J]udicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law.' " [Citations.]' " (*Los Angeles Lincoln Place Investors, Ltd.* v. *City of Los Angeles* (1997) 54 Cal.App.4th 53, 59 [62 Cal.Rptr.2d 600].) Where the case involves the interpretation of a statute, we engage in de novo review of the trial court's determination to issue the writ of mandate. (*Ibid.*)

*PERS*

"The [PERL] establishes PERS, a retirement system for employees of the state and participating local public agencies. [] PERS is a prefunded, defined benefit plan which sets an employee's retirement benefit upon the factors of retirement age, length of service, and final compensation. [Citation.] Retirement allowances are therefore partially based upon an employee's compensation. An employee's compensation is not simply the cash remuneration received, but is exactingly defined to include or exclude various employment benefits and items of pay. [Citation.] The scope of compensation is also critical to setting the amount of retirement contributions, because PERS is funded by employer and employee contributions calculated as a percentage of employee compensation." (*Oden* v. *Board of Administration* (1994) 23 Cal.App.4th 194, 198 [28 Cal.Rptr.2d 388].)

"[E]mployer and employee contributions . . . , distinguished more by form than substance, are nevertheless subject to disparate tax treatment." (*Oden* v. *Board of Administration, supra*, 23 Cal.App.4th at p. 198.) "Employers' contributions are not taxable income to the employee until benefits are paid upon separation or retirement, whereas employees' contributions are ordinarily taxable income when made, but not taxed at disbursement of benefits. [Citation.] Accordingly, tax deferral is achieved where retirement contributions are made by the employer, rather than the employee." (*Id.* at pp. 198-199.) However, tax deferral can be achieved for employees of state or local governments, if the government employer "picks up" the employee contributions. (*Id.* at p. 199.) The government employer may "pick up" the

employee contributions in two ways: the salary of the employee may be increased and the contribution can be made from the increased salary as a salary deduction, or the employer may pay the employee contribution as an addition to the salary of the employee. (*Id.* at pp. 199-200.) "Both salary deduction and salary addition methods of paying employees' contributions are tax-advantaged 'pick ups' under federal law." (*Id.* at p. 200.) "While both methods of paying employees' contributions are 'pick ups' under federal law, not all employees' contributions have been considered 'compensation' under California law. PERS regards employee-paid salary deductions as compensation while excluding employer-paid salary additions from compensation. The employee's stated salary is treated as compensation by PERS, regardless of deducted or added pension contributions." (*Ibid.*)

■ "Statutory definitions delineating the scope of PERS compensation cannot be qualified by bargaining agreements." (*Oden* v. *Board of Administration, supra*, 23 Cal.App.4th at p. 201.) Nor can the PERS Board characterize contributions as compensation or not compensation under the PERL; those determinations are for the Legislature. (*Ibid.*) The Legislature has excluded employer-paid salary-addition employee contributions from compensation under the PERL and included employer-paid salary-deduction employee contributions. (*Id.* at p. 203.)

In this case, there is no question that the employer-paid salary-addition employee contributions paid by the City are not included in compensation under the PERL. There is also no question that this result cannot be changed either by the collective bargaining agreement or by PERS.[3]

*Retirement Conversion Option*

■ The Association concedes that an employer-paid salary-addition employee contribution cannot be reported to PERS by the City as compensation for retirement purposes. The Association contends, however, that with respect to an employee who exercises the retirement conversion option under the collective bargaining agreement, the contribution is transformed into an employer-paid salary-deduction employee contributions and is therefore includible in compensation under the PERL. The Association argues that, upon exercise of the retirement conversion option, an employee prospectively relinquishes a salary addition in exchange for a salary increase and corresponding salary deduction, and therefore legitimately increases his or her

---

[3]Although employer-paid salary-addition employee contributions are excluded from compensation, at one time the PERS Board recognized an exception for contributions by public agencies which had stipulated in collective bargaining agreements to report the contributions as compensation. (*Oden* v. *Board of Administration, supra*, 23 Cal.App.4th at pp. 200-201.)

compensation for retirement purposes. We are not persuaded by this contention. The conversion of the salary additions to salary deductions for retirement purposes merely recharacterizes excluded compensation as included compensation and is ineffective.

In order to understand the true nature of the retirement conversion option, we must look at the economics of pension contributions. Suppose a government employee is paid a salary of $50,000 per year. The employee is required to contribute 9 percent of that salary, or $4,500, to PERS. The employer contribution to PERS is also based on the salary of $50,000. The employee pays income taxes on the $50,000 salary. At retirement, the employee's retirement allowance is based on compensation of $50,000.

The government employer may, however, agree to assist the employee in reducing income taxes by "picking up" the employee contribution in one of two ways. First, the government employer may deduct the employee contribution from the employee's salary and transmit the employee contribution directly to PERS (salary-deduction method). In our hypothetical, the employer deducts $4,500 from the employee's salary and transmits the $4,500 to PERS. The employee now pays income taxes on only $45,500, but still receives a retirement allowance based on $50,000. Importantly, both employer and employee contributions are determined on the basis of the $50,000 salary. Second, the employer may pay the employee contribution directly to PERS in addition to the salary paid to the employee (salary-addition method). In our hypothetical, the employer transmits $4,500 directly to PERS in addition to the $50,000 salary which is paid to the employee. The employee pays income taxes on $50,000, and the retirement allowance and contributions are based on $50,000. The employee's net compensation is increased.

Suppose the employer has agreed to "pick up" the employee contribution using the salary-addition method ($50,000 salary plus $4,500 salary addition). Suppose further that a year prior to retirement, the employee exercises a retirement conversion option converting the salary addition to salary for retirement purposes ($54,500 salary). The employer now "picks up" the employee contribution as a salary deduction ($4,900 salary deduction). The net income and income tax consequences to the employee are essentially the same before and after the conversion. If the conversion is effective for retirement purposes, the employee's retirement allowance will be based on $54,500. However, it is only following exercise of the retirement conversion option that contributions to the pension plan will be based on the increased salary ($54,500). For all prior years, the contributions are based on the lower salary ($50,000). Thus, the employee's retirement benefit will have been

underfunded. The net effect is that the employer is able to provide its employees with an increased retirement benefit without bearing the cost of the increase.

The retirement conversion option in this case permits eligible employees to convert the employer-paid salary-addition employee contribution of 9 percent to salary for retirement purposes. It is evident from the entire provision that the sole purpose of the conversion is to increase the employee's retirement allowance. The exercise of the option does not prospectively convert the salary addition to salary. The conversion does not affect vacation or overtime. It is available, in general, only to employees who take a service retirement and is not available to employees taking a disability retirement. The retirement conversion option is simply an attempt to convert excluded compensation into included compensation for retirement purposes at no substantial cost. The attempt fails. Any other resolution of this issue would permit local government employers and their employees to engage in blatant pension abuse at the expense of PERS and its other participants.[4]

*Section 20692*

■ The Association contends that even if the retirement conversion option were invalid when adopted, subsequent legislation has provided for the validation of such options. Effective July 1, 1994, the PERL was amended to curb certain perceived pension abuses of local governments. The amendments included validation of retirement conversion options under certain conditions, including prefunding of the option by the employer and public notice.[5] Under section 20691 (former § 20615) an employer may pay the employee contributions to PERS on behalf of all the employees in a

---

[4]We need not decide whether the retirement conversion would constitute excluded "final settlement pay" under section 20636, subdivisions (c)(7)(A) and (f) (former § 20023, subds. (c)(7)(A) and (f)) or would not constitute included "compensation earnable" under section 20636, subdivision (a) (former § 20023, subd. (a)).

[5]Governor Pete Wilson issued the following message upon signing the bill. " 'To the Members of the California Senate: [¶] I have signed this date Senate Bill No. 53. [¶] This bill would enact several changes to the Public Employees Retirement Law in an effort to curb pension abuse at the local level. [¶] This bill represents a comprehensive attempt to eliminate pension abuse in the nearly 1,700 cities, counties, and special districts. [¶] The otherwise worthwhile reforms in this bill are marred by the inclusion of one egregious provision which allows employer-made member contributions to be considered compensation for the purposes of calculating retirement benefits. Were it not for the fact that this provision is only an optional benefit and only implemented on a pre-funded basis after two public meetings of the local government body, I would have taken different action. [¶] But, since the reforms in this bill are mandatory and the offending provision is optional under local collective bargaining, I have signed this bill. [¶] At the same time, I encourage the public to attend the noticed local meetings when this provision is discussed and register their disapproval of its implementation.' " (Historical Note, 33B West's Ann. Gov. Code (1995 ed.) foll. § 20022, p. 307.)

class. Section 20692 (former § 20615.5) provides in pertinent part: "(a) Where a contracting agency employer . . . has elected to pay all or a portion of the normal contributions of members of a group or class of employment pursuant to Section 20691, the employer may, pursuant to a labor policy or agreement, stop paying those contributions during the final compensation period applicable to the members and, instead, increase the payrate of the members by an amount equal to the normal contributions paid by the employer on behalf of the employees in the pay period immediately prior to the final compensation period or increase the payrate of the members by an amount established by a labor policy or agreement in existence and in effect on June 30, 1993. That amount shall not exceed the amount of the normal member contributions that are required to be paid by the members. [¶] (b) This section shall not apply to any contracting agency . . . unless and until the contracting agency . . . elects to be subject to this section by amendment to its contract made in the manner prescribed for approval of contracts, except an election among the employees is not required. In the case of contracts made after July 1, 1994, the section shall not apply unless incorporated by express provision in the contract. . . . [¶] (c) Before adopting this provision, the governing body of a contracting agency . . . shall, with timely public notice, place the consideration of this section on the agendas of two consecutive public meetings of the governing body, at which time, full disclosure shall be made of the nature of the benefit, the additional employer contributions, and the funding therefor. Only after the second of these public meetings may the governing body adopt this section. The employer shall notify the board of the employer's compliance with this subdivision at the time of the governing body's application to adopt this section. [¶] . . . [¶] (e) The additional employer contributions required under this section shall be computed as a level percentage of member compensation. The additional contribution rate required at the time this section is added to a contract shall not be less than the sum of (1) the actuarial normal cost, plus (2) in the case of a contract amendment, the additional contribution required to amortize the increase in accrued liability attributable to the benefit elected under this section over the unfunded actuarial liability period currently in the agency's contract, commencing from the date this section becomes effective in the agency's contract."

If an employer is required to adopt a specific code section in its contract with PERS before a particular PERS benefit will be available to its employees, and the employer does not adopt that code section, the employer has not contracted with PERS to provide that benefit and its employees are not entitled to the benefit. (*Feliciano* v. *Board of Administration* (1991) 1 Cal.App.4th 143, 147-148 [1 Cal.Rptr.2d 576].) Here, the City has not amended its contract with PERS electing to adopt the provisions of section

20692. Thus, the retirement conversion option is not a PERS benefit to which City employees are entitled.

The Association counters that the City should be mandated to elect the provisions of section 20692 by amending its contract with PERS. It bases this contention on the City's agreement to provide the retirement conversion option in the collective bargaining agreement. It further bases this contention on the provision in the collective bargaining agreement requiring the conditions and procedures applicable to the exercise of the retirement conversion option to be uniform among all police employees. The Association asserts that, because the City has amended its contract with PERS to elect the retirement conversion option for management police employees, it must similarly amend its contract with PERS as to nonmanagement police employees.

The first argument is easily refuted. The City agreed to provide the retirement conversion option at a time when such an option had no legislative support and was therefore invalid. At the time the City agreed to the option, the parties contemplated that the option could be provided at little or no cost to the City. Section 20692 now permits the City to provide the retirement conversion option under certain conditions. One of the conditions is that the City must agree to prefund the retirement conversion option, a cost it was not required to bear previously. A second condition requires public notice and a right of the public to be heard on the election. The legislation enacting section 20692 clearly contemplated the presence of retirement conversion options in existing collective bargaining agreements. The legislation also clearly contemplated that those existing options would not become validated by mere enactment of the statute, but rather required subsequent legislative action, taking into account the economic considerations and subjecting the decision to public scrutiny. It would defeat the intent of the legislation to effectively deem the option adopted by operation of law.

As to the second argument, we reiterate that section 20692 does not contemplate mandatory election of the retirement conversion option based on provisions in existing collective bargaining agreements. Moreover, the provision in the collective bargaining agreement requiring uniform conditions and procedures applicable to the exercise of a retirement conversion option has no bearing on the existence of the option. Thus, the provision cannot be utilized to mandate the adoption of an effective retirement conversion option. Finally, in light of the new economic considerations, a retirement conversion option is a proper subject of negotiations for a new or revised collective bargaining agreement. We note that the City and the

Association originally agreed to the retirement conversion option in good faith and with a mutual misunderstanding of its validity or effectiveness.

To order the City to provide the Association with the same benefit provided to the management police employees, with all the resulting changes to the terms and conditions of salary and other negotiated items, would be to order the City to enter into a particular, judicially created collective bargaining agreement. This is beyond the proper scope of mandate.

*Alternative Economic Benefits*

▮▮▮ The Association contends that the trial court erred by refusing to compel the City to provide an economic benefit equivalent to the retirement benefit contemplated by the collective bargaining agreement. We disagree.

▮▮▮ "It is a general rule that the extraordinary remedy of mandate is not available when other remedies at law are adequate. [Citations.] In proceedings involving claims for wages by municipal employees or by parties to a contract with a municipality, it is generally held that an ordinary action at law for damages is adequate, and a writ of mandate will be denied. [Citation.] As this court has pointed out, '[i]t is settled that mandamus does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract.' [Citation.] [¶] In a few situations involving claims by state or municipal employees for wages the general rule has been relaxed. For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved." (*Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 198 [272 P.2d 757].)

▮▮▮ As discussed above, the City does not have an official duty to report additional compensation to PERS or to adopt section 20692. The City cannot adjust the employees' compensation, nor can PERS include the additional payments as salary. The collective bargaining agreement requires only that the City convert its pension plan contributions to salary for retirement purposes. There is no alternative provision for purchasing annuities, paying a lump sum, or otherwise providing an equivalent economic benefit. Therefore, the Association's request for an equivalent economic benefit constitutes a claim for damages for which there was an adequate remedy at law in a breach of contract action. To the extent the provisions of the collective bargaining agreement created a contract which the employees

relied upon and unjustly enriched the City, the Association had a cause of action against the City for any breach of that contract. The City should not be denied procedural safeguards, such as claim statutes and the right to a jury trial, which it would enjoy in an ordinary action at law. The trial court correctly denied the petition for writ of mandate.

### DISPOSITION

The judgment is affirmed. The City is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied November 5, 1997, and appellant's petition for review by the Supreme Court was denied January 14, 1998. Kennard, J., was of the opinion that the petition should be granted.