TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-303 |
| of | : | June 4, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| ANTHONY S. Da VIGO<br>Deputy Attorney General | : | |

THE HONORABLE RICHARD E. FLOYD, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. Does an incompatible activities statement adopted by the Board of Administration of the Public Employees' Retirement System pursuant to Government Code section 19990 apply to the members of the Board of Administration?

2. May a person who has declared bankruptcy serve on the Board of Administration of the Public Employees' Retirement System?

CONCLUSIONS

1. An incompatible activities statement adopted by the Board of Administration of the Public Employees' Retirement System pursuant to Government Code section 19990 does not apply to the members of the Board of Administration.

2. A person who has declared bankruptcy may serve on the Board of Administration of the Public Employees' Retirement System.


ANALYSIS

1. Incompatible Activities Statement

The first inquiry is whether an incompatible activities statement adopted by the Board of Administration ("Board") of the Public Employees' Retirement System ("PERS") pursuant to Government Code section 19990[1] applies to the members of the Board itself. Section 19990 states in part:

> "A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee.

> "Each appointing power shall determine, subject to approval of the department, those activities which, for employees under its jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees. . . ."

We conclude that the Board's incompatible activities statement adopted under the terms of section 19990 does not apply to the members of the Board itself.

Preliminarily, we note that the Legislature has enacted a comprehensive statutory scheme, the Public Employees' Retirement Law (§§ 20000-21703), governing the payment of retirement compensation to public employees. (See *Pomona Officers' Assn.* v. *City of Pomona* (1997) 58 Cal.App.4th 578, 584-585; *Board of Administration* v. *Wilson* (1997) 52 Cal.App.4th 1109, 1119-1120; *Oden* v. *Board of Administration* (1994) 23 Cal.App.4th 194, 198; *Claypool* v. *Wilson* (1992) 4 Cal.App.4th 646, 653-655; *City of*

---

[1] Unidentified section references hereinafter are to the Government Code.

*Sacramento* v. *Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478-1479; *Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 780-783.) While PERS is part of the State and Consumer Services Agency (§ 20002), it provides retirement benefits not only for state employees but also for the employees of local public agencies that have contracted for coverage (*Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1021; 71 Ops.Cal.Atty.Gen. 129, 129-130 (1988); 70 Ops.Cal.Atty.Gen. 189, 190-191 (1982)).

PERS is managed by the Board (§ 20120), which is comprised of 13 members (§ 20090; 72 Ops.Cal.Atty.Gen. 58, 59 (1989)) serving four-year terms of office (§ 20095). Section 20090 states:

"The Board of Administration of the Public Employees' Retirement System is continued in existence. It consists of:

"(a) One member of the State Personnel Board, selected by and serving at the pleasure of the State Personnel Board.

"(b) The Director of the Department of Personnel Administration.

"(c) The Controller.

"(d) The State Treasurer.

"(e) An official of a life insurer and an elected official of a contracting agency, appointed by the Governor.

"(f) One person representing the public, appointed jointly by the Speaker of the Assembly and the Senate Committee on Rules.

"(g) Six members elected under the supervision of the board as follows:

"(1) Two members elected by the members of this system from the membership thereof.

"(2) A member elected by the active state members of this system from the state membership thereof.

"(3) A member elected by and from the active local members of this system who are employees of a school district or a county superintendent of schools.

"(4) A member elected by and from the active local members of this system other than those who are employees of a school district or a county superintendent of schools.

"(5) A member elected by and from the retired members of this system."

Returning to the language of section 19990, we find that the Board has adopted an incompatible activities statement for "employees" under its "jurisdiction" as an "appointing power." The statute does not authorize the adoption of an incompatible activities statement for the "appointing power," in this case the Board. We reject the suggestion that "employees" under the "jurisdiction" of the Board, as an "appointing power," would include the Board members themselves.

While Board members are not subject to an incompatible activities statement which they adopt for their employees under the terms of section 19990, we note that Board members are not without statutory limitations placed upon their official and private conduct. For example, subdivision (a) of section 8920 states generally with respect to state officers, including Board members:

"No Member of the Legislature, state elective or appointive officer, or judge or justice shall, while serving as such, have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest and of his responsibilities as prescribed in the laws of this state."

More specifically, section 20150 states with respect to members of the Board:

"A board member or employee of the board shall not, directly or indirectly:

"(a) Have any interest in the making of any investment, or in the gains or profits accruing therefrom.

"(b) For himself or herself or as an agent or partner of others, borrow any funds or deposits of this system, nor use those funds or deposits in any manner except to make current and necessary payments authorized by the board.

"(c) Become an indorser, surety or obligor on investments by the board."

Section 20151 prescribes additional fiduciary standards for Board members:

"The board and its officers and employees shall discharge their duties with respect to this system solely in the interest of the participants and beneficiaries:

"(a) For the exclusive purpose of both of the following:

"(1) Providing benefits to members, retired members, and their survivors and beneficiaries.

"(2) Defraying reasonable expenses of administering this system.

"(b) Minimizing the employers' costs of providing benefits under this part.

"(c) By investing with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an enterprise of a like character and with like aims."

Further, section 20153 provides in part:

"(a) During the process leading to an award of any contract by the system, no member of the board or its staff shall knowingly communicate concerning any matter relating to the contract or selection process with any party financially interested in the contract or an officer or employee of that party, unless the communication is (1) part of the process expressly described in the request for proposal or other solicitation invitation, or (2) part of a noticed board meeting, or (3) as provided in subdivision (c). Any applicant or bidder who knowingly participates in a communication that is prohibited by this subdivision shall be disqualified from the contract award.

"(b) During the evaluation of any prospective investment transaction, no party who is financially interested in the transaction, or an officer or employee of that party, may knowingly communicate with any board member

concerning any matter relating to the transaction or its evaluation, unless the financially interested party discloses the content of the communication in a writing addressed and submitted to the executive officer and the board prior to the board's action on the prospective transaction. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) Consistent with its fiduciary duties, the board shall determine the appropriate remedy for any knowing failure of a financially interested party to comply with this subdivision including, but not limited to, outright rejection of the prospective investment transaction, reduction in fee received, or any other sanction.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Other statutes applicable to Board members include section 1090, governing financial interests in contracts made by public officers in their official capacities, and section 87100, regulating financial interests in decisions made by public officers in their official capacities. (See 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995).) The Ethics in Government Act (§§ 89500-89522) regulates the acceptance of honoraria and gifts by Board members. (§ 20094.)

It is concluded that an incompatible activities statement adopted by the Board under the terms of section 19990 does not apply to the members of the Board itself.[2]

2.      Declaration of Bankruptcy

The second inquiry is whether a declaration of bankruptcy is a basis for disqualifying a person from serving on the Board. We conclude that it is not.

The statutes providing for disqualification for and vacancy of public office do not include a declaration of bankruptcy as a cause for such events. (§§ 1020-1028, 1770.) The other statutes discussed above, governing the conduct of Board members, neither prohibit a determination of personal bankruptcy nor prescribe disqualification or forfeiture of office as a consequence thereof. (See §§ 8920, 20150-20153, 89500.)

---

[2] We reached the same conclusion with respect to the Board's members under former section 19251, the predecessor statute to section 19990. (Cal. Atty. Gen., Indexed Letter, No. IL 68-122 (May 15, 1968); see 65 Ops.Cal.Atty.Gen. 316, 317, fn.1 (1982); 53 Ops.Cal.Atty.Gen. 163, 170-171 (1970).)

The qualifications of Board members are set by the Legislature. (§ 20100.) We find no statutory or other authority upon which a disqualification based on a declaration of bankruptcy may be predicated.

It is concluded that a person who has declared bankruptcy may serve on the Board.[3]

\* \* \* \* \*

---

[3] In view of the conclusion reached, it is unnecessary to consider whether a state statute providing for disqualification from public office due to a declaration of bankruptcy, a matter governed by the United States Constitution and federal laws, would withstand federal constitutional scrutiny. (Cf. *Grimes* v. *Hoschler* (1974) 12 Cal.3d 305.)