Filed 7/9/24  Neal v. The Regents of the University of California CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ADAM L. NEAL, | C099096 |
| Plaintiff and Appellant, | (Super. Ct. No. 34202100304266CUMMGDS) |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

Plaintiff Adam L. Neal (Neal) appeals in propria persona from a judgment of dismissal after the trial court sustained the demurrer of defendant the Regents of the University of California (the Regents) to his second amended complaint without leave to amend.  Neal argues the trial court erred in sustaining the demurrer and continuing the hearing on a pending discovery motion, then dropping the motion as moot in light of the demurrer ruling.  Finding no error, we will affirm.

1

## I.  BACKGROUND

This appeal marks the latest chapter in Neal's years-long dispute with the Regents. The relevant events were set in motion in November 2016, when Neal presented to the emergency room of UC Davis Medical Center, complaining of chest pains.  During the course of that emergency room visit, Neal was placed on an involuntary psychiatric hold pursuant to Welfare and Institutions Code section 5150 (the 5150 hold).[1]  He was transferred by ambulance to the Sacramento County Mental Health Treatment Center, where he was given a patient advisory that said he was being held for refusing to take medication and a handbook describing his rights as a patient.  Neal was released shortly thereafter.

Neal sued the Regents in October 2019 in the first of three separate actions, all arising from the 5150 hold.  (Sacramento County case No. 34-2019-00267042.)  Neal's first amended complaint in the first action alleged false imprisonment and battery, among other things.  The Regents demurred and the trial court sustained the demurrer without leave to amend on various grounds, including the statutory immunity provided by Welfare and Institutions Code section 5278 and the applicable statute of limitations. (Code Civ. Proc., § 340.5.)  Neal filed a motion for reconsideration, which was dropped for lack of jurisdiction.  That was the end of Neal's first action against the Regents, but the beginning of the parties' current dispute.

Neal commenced this, his second action against the Regents, in July 2021.[2] Where the first action challenged the propriety of the 5150 hold, the instant action

---

[1] Welfare and Institutions Code section 5150 authorizes a 72-hour commitment to a mental health facility of a person who, "as a result of a mental health disorder, is a danger to others, or to themselves."

[2]  Neal commenced a third action arising from the 5150 hold in July 2022.  (Sacramento County case No. 34-2022-00323861.)  That action names the licensed social worker who

challenges its documentation. As we shall discuss, the operative second amended complaint alleges the Regents violated Penal Code section 471.5 by altering or modifying Neal's medical records to conceal their alleged misconduct in placing the 5150 hold in the first instance.[3]

A.      *Second Amended Complaint*

The second amended complaint purports to assert a single cause of action pursuant to section 471.5. That statute, which we discuss more fully below, provides: "Any person who alters or modifies the medical record of any person, with fraudulent intent, or who, with fraudulent intent, creates any false medical record, is guilty of a misdemeanor." (§ 471.5.) The second amended complaint also invokes Business and Professions Code section 2262, which similarly proscribes the alteration or modification of any medical record with fraudulent intent, and Welfare and Institutions Code section 5150, subdivisions (e), (i), and (j), which require the creation of various documents in connection with 5150 holds.[4] As relevant here, Welfare and Institutions Code section 5150, subdivision (e) requires an application in writing by a peace officer or other authorized person stating the circumstances giving rise to probable cause for the detention, and subdivisions (i) and (j) require an involuntary patient advisement, also in writing, stating the reason for the detention and advising the detainee that he could be held for 72 hours, after which, he would have the right to an attorney. These statutes

---

placed the 5150 hold as a defendant and alleges constitutional violations under 42 United States Code section 1983 and Civil Code section 52.1.

[3] Undesignated statutory references are to the Penal Code.

[4] Business and Professions Code section 2262, entitled "Alteration of medical records," provides, in pertinent part: "Altering or modifying the medical record of any person, with fraudulent intent, or creating any false medical record, with fraudulent intent, constitutes unprofessional conduct."

provide context for the second amended complaint's factual allegations, to which we now turn.

The second amended complaint focuses on events following Neal's release from the 5150 hold. According to the second amended complaint, Neal complained to the UC Davis Patient Relations Department and requested copies of "all" of his medical records from the UC Davis Custodian of Records. He received a set of records spanning 45 pages. That set of records contained references to the 5150 hold but no psychiatric assessment or patient advisement. This omission was significant, the second amended complaint suggests, because the psychiatric assessment and patient advisement were required by Welfare and Institutions Code section 5150, subdivisions (e), (i), and (j), and Neal does not remember being assessed prior to being placed on the 5150 hold.[5]

The second amended complaint alleges Neal had previously received another set of records containing "121 more pages," including the now missing psychiatric assessment and patient advisement.[6] The second amended complaint theorizes the Regents withheld the psychiatric assessment and patient advisement "as an act of extrinsic fraud" to interfere with the prosecution of Neal's first action against them. This, Neal says, was a violation of section 471.5.

The second amended complaint does not specify what relief Neal seeks; however, Neal's opening brief indicates he seeks an order directing the Regents to produce "a full and complete set of the unfiltered and unaltered audit trail, audit logs, and access logs for [Neal's] medical record in native format."

---

[5] We note that Neal appears to have attached copies of the psychiatric assessment and patient advisement to various pleadings in his first action against the Regents.

[6] The second amended complaint is ambiguous as to whether Neal received the larger set of records before or after he commenced the instant action. However, earlier iterations of the complaint allege Neal received the larger set of records from an attorney who had previously represented him in an unrelated matter.

### B. *Motion to Compel*

As noted, Neal commenced the instant action in July 2021. He served a subpoena duces tecum on the Regents' custodian of records in September 2022. The subpoena sought the "full and complete set of unfiltered and unaltered audit trail in native format" for Neal's medical records. The Regents produced some records, but not the native data sought by the subpoena. Neal filed a motion to compel on October 11, 2022. By then, Neal had filed his second amended complaint.

The Regents filed their demurrer on October 18, 2022, and applied for an order shortening time for the hearing on the demurrer or continuing the hearing on the motion to compel soon thereafter. The trial court granted the application and continued the hearing on the motion to compel "in the interests of judicial economy."

### C. *Demurrer and Judgment*

The trial court sustained the demurrer without leave to amend by order dated February 14, 2023. The trial court rejected Neal's attempt to state a cause of action pursuant to section 471.5 or Business and Professions Code section 2262, stating: "Here, Penal Code section 471.5 and Business and Professions Code section 2262 both use derivatives of the words alter or modify. The Court finds that the plain and commonly understood meaning of these words, which are synonyms of each other, is to change. . . . [¶] Plaintiff has not stated a cause of action for violation of either of these statutes since he does not allege that Defendant changed his medical records. Rather, the gravamen of his [second amended complaint] is that Defendant did not produce to him a complete set of his medical records." The trial court went on to say that Neal had not shown how the second amended complaint could be amended to state any other cause of action. Accordingly, the trial court sustained the demurrer without leave to amend.

In light of the ruling on the demurrer, the trial court dropped several pending motions as moot, including Neal's motion to compel. The trial court entered a judgment of dismissal on May 18, 2023. This appeal timely followed.

5

## II. DISCUSSION

Neal challenges both the order sustaining the demurrer, and the order ruling the motion to compel was moot in light of the demurrer ruling.  We address each challenge in turn.

*A.    Demurrer*

Neal argues the trial court erred in finding section 471.5 inapplicable.[7]  He suggests the trial court adopted an overly narrow interpretation of the statute, adding that the omission of the psychiatric assessment and patient advisement could be seen as "altering" or "modifying" the clinical picture conveyed by the records as a whole.  This argument fails.

*1.    Standard of Review*

We independently review a judgment of dismissal based on an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  We assume all the facts alleged in the complaint are true.  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.)  We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  We may also consider matters subject to judicial notice.  (*Ibid.*)

We also independently review the application of an interpreted statute to undisputed facts.  (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912-913.)  "We start with the statute's words, which are the most reliable indicator of legislative intent."  (*In re R.T.* (2017) 3 Cal.5th 622, 627.)  These words are generally given their ordinary meanings, but "when a word or phrase appearing in a statute 'has a

---

[7] Neal's opening brief does not discuss Business and Professions Code section 2232. Accordingly, we focus our analysis on section 471.5

well-established *legal* meaning, it will be given that meaning in construing the statute.' " (*Brown v. Superior Court* (2016) 63 Cal.4th 335, 351; accord *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 850, fn. 3 [" '[w]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language' "].)

Where, as here, a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.)

2.    *Analysis*

Section 471.5 provides: "Any person who alters or modifies the medical record of any person, with fraudulent intent, or who, with fraudulent intent, creates any false medical record, is guilty of a misdemeanor." By its terms, section 471.5 creates criminal liability. (§471.5 [one who violates the statute "is guilty of a misdemeanor"].)[8] Neal does not argue that section 471.5 creates any private right of action. (See *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 ["a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right"]; see also *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 11 [embracing a "strong policy favoring use of

---

[8] As noted, Business and Professions Code section 2262 similarly prohibits, "Altering or modifying the medical record of any person, with fraudulent intent, or creating any false medical record, with fraudulent intent." That statute does not appear to us to establish a private right of action either. (*Ibid*. [providing for civil penalties and disciplinary action by the Division of Medical Quality or California Board of Podiatric Medicine].) We need not decide this question, however, as Neal does not suggest otherwise.

nontort remedies rather than derivative tort causes of action to punish and correct litigation misconduct"].)  Nor does Neal propose to amend the second amended complaint to identify any other right of action.  But even assuming section 471.5 provides or supports some private right of action, the second amended complaint fails to allege facts showing the statute was violated.

Section 471.5 makes it a misdemeanor to alter or modify a medical record with fraudulent intent.  The trial court focused on the words "alter" and "modify," noting both are synonyms for "change."  (See Merriam-Webster Collegiate Dict. Online (2024) <https://www.unabridged.merriam-webster.com/collegiate/alter > [as of July 3, 2024] [defining "alter" to mean, *inter alia*, "to make different without changing into something else"] and <https://www.unabridged.merriam-webster.com/collegiate/modify > [as of July 3, 2024] [defining "modify" to mean, *inter alia,*, "to make minor changes in"].)  Neal does not seriously dispute these definitions.  Instead, he suggests one medical record may be "altered" or "modified" by the omission of another.  Thus, Neal says "the record [here] was made incomplete (i.e., altered)" through the omission of the psychiatric assessment and advisement.  This argument does not work.

To show why, we look again to the language of the statute.  (*In re R.T., supra,* 3 Cal.5th at p. 627.)  "Alter" and "modify" mean "change," as the trial court correctly observed.  But "alter" also has an established legal meaning, which the Legislature is presumed to have known and intended.  (*Ruiz v. Podolsky, supra,* 50 Cal.4th at p. 850, fn. 3; see also *Oden v. Board of Administration* (1994) 23 Cal.App.4th 194, 202 ["the Legislature is presumed to have been aware of a word's settled legal meaning and to have adopted it in framing legislation"].)  Specifically, the word "alter" is the verb form of "alteration," which is defined, in part, as "[a]n act done to an instrument, after its execution, whereby its meaning or language is changed; esp., the changing of a term in a negotiable instrument without the consent of all parties to it."  (Black's Law Dictionary (12th ed. 2024) p. 97, col. 2; see also Merriam-Webster Collegiate Dict. Online (2024)

8

<https://www.unabridged.merriam-webster.com/collegiate/alteration > [as of July 3, 2024] [defining "alteration," in part, as "a change in a legal instrument that alters its legal effect"].)  That meaning fits logically within the overall statutory scheme.

Section 471.5 appears in Chapter 4 of Title 13 of the Penal Code, entitled "Forgery and Counterfeiting."  As the chapter heading suggests, many of the statutes therein are concerned with forgery, and most define "forgery," in part, with the verb "alter."  (See, e.g., § 470, subds. (c) and (d) [making guilty of forgery any person who, with intent to defraud, "alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument," or "falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine" certain negotiable instruments]; § 470a [making guilty of forgery any person who, with intent to defraud, "alters, falsifies, forges, duplicates or in any manner reproduces or counterfeits any driver's license or identification card"]; § 471 [making guilty of forgery any person who, with intent to defraud, "makes, forges, or alters any entry in any book of records"]; § 475, subd. (a) [making guilty of forgery any person who knowingly possesses or receives, with the intent to pass or facilitate the passage or utterance of any "forged, altered, or counterfeit items"].)  Thus, "alter" appears to have a special meaning in the context of the forgery, one that characteristically entails an alteration on the face of a single instrument or record (e.g., a will, check, or driver's license), rather than a change in meaning brought about by the addition or subtraction of one or more records to some larger set.  (See *People v. McKenna* (1938) 11 Cal.2d 327, 332 ["The crime of forgery consists . . . in the false making or alteration of a document without authority"]; 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2023) Alteration, § 175 [explaining that alteration of a writing may entail the insertion of matter in an existing signed document, the erasure and change or elimination of some part of the document, or the unauthorized filling in of blanks].)

Of course, section 471.5 also uses the word "modify" (or modifies), which does not otherwise appear in Chapter 4.  "Modify" arguably supports a broader interpretation

9

of section 471.5; one perhaps less tied to the concept of forgery. (See generally *MCI Telecommunications Corp. v. American Tel. & Tel. Co.* (1994) 512 U.S. 218, 225-227 [surveying different dictionary definitions of "modify"]; *id.* at p. 227 [concluding the word "modify" "connotes moderate change"].) But whatever the precise definition, the word "modify," used here as a transitive verb, requires an object; that is, the thing to be modified. (See Strunk & White, *The Elements of Style* 95 (4th ed. 2000) [defining transitive verb as a "verb that requires a direct object to complete its meaning"].) And here, the object of the verb "modify" can only be "the medical record of any person." (§ 471.5.) So now we must ask whether "the medical record of any person" consists of a single record (e.g., a specific lab report or admitting sheet), or an amalgamation of records (e.g., the complete set of medical records comprising a person's available health history).

Section 471.5 does not define the term "medical record." However, Neal directs our attention to Health and Safety Code section 123105, subdivision (b), which defines "mental health records" as "patient records, or discrete portions thereof, specifically relating to evaluation or treatment of a mental disorder."[9] Health and Safety Code section 123105, subdivision (d), in turn, defines "patient records" as "records in any form or medium maintained by, or in the custody or control of, a health care provider relating to the health history, diagnosis, or condition of a patient, or relating to treatment provided or proposed to be provided to the patient."

Here, we note that section 471.5 refers to "the medical record of any person," in the singular form, while Health and Safety Code section 123105, subdivisions (b) and (d)

---

[9] Neal's opening brief actually refers to Health and Safety Code section 12305, but that statute deals with the unlawful possession of explosives. (See Health & Saf. Code, § 12305.) We understand Neal to have intended to refer to Health and Safety Code section 123105.

10

refer to "mental health records" and "patient records," in the plural form. We think this difference is significant. Although "the English language does not always carefully differentiate between singular and plural word forms," we believe the Legislature likely intended for the crime of alteration or modification of a medical record with fraudulent intent to be accomplished through an unauthorized act on a single record. (2A Singer, Sutherland Statutory Construction (7th ed. 2015) § 47.34.) We do not believe the Legislature intended to reach the change in clinical impression that occurs when discrete records are added to, or taken away from, an amalgamation of medical records. (See also *People v. Bratis* (1977) 73 Cal.App.3d 751, 757 ["As used in connection with the forgery statutes in the Penal Code (§ 470 et seq.), it is recognized that alteration is within the definition of forgery and is precise enough to give adequate notice to persons of ordinary intelligence"].) This interpretation makes the most sense in light of the overall statutory scheme.[10]

The second amended complaint does not allege that anyone altered or modified any particular medical record. Although the second amended complaint refers to the psychiatric assessment and patient advisement, nothing suggests either record was changed in any way. To the contrary, the second amended complaint alleges the medical records produced by the Regents were "identical" to those Neal had previously received (presumably, from his former attorney), but for the omission of the psychiatric assessment and patient advisement. As we have suggested, we are not at all convinced section 471.5 reaches the Regents' alleged failure to produce the psychiatric assessment and patient advisement (which Neal apparently already had). Therefore, even assuming a private right of action exists, the second amended complaint fails to allege a violation of

---

[10] Neal also directs our attention to section 952, which deals with the language used in charging public offenses. That statute has no application here.

11

section 471.5 causing harm to Neal. Because Neal does not suggest the trial court should have granted further leave to amend, we have no occasion to consider that issue.

B.      *Motion to Compel*

Neal also argues the trial court erred in granting the Regents' ex parte application to continue the hearing on his motion to compel discovery until after the hearing on their demurrer, and then ruling the discovery motion was moot in light of the demurrer ruling. We would ordinarily review an order granting or denying an application to continue a hearing for abuse of discretion. (*Bull Field, LLC v. Merced Irrigation District* (2022) 85 Cal.App.5th 442, 452-453.) Here, however, we have already concluded the trial court properly sustained the demurrer, and Neal does not suggest any amendment to the second amended complaint. Under the circumstances, we are inclined to agree with the trial court that the ruling on the demurrer rendered the motion to compel moot, and Neal does not suggest otherwise. Nor does he explain how the decision to continue the hearing was an abuse of discretion. No error appears.

### III.  DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

MAURO, Acting P. J.

/S/

KRAUSE, J.

12